James W. Baugher and others, Executors of Isaac Baugher, vs. Samuel Duphorn, Robert Annan and David Gamble.—*December* 1850.

A principal in a bond agreed with his sureties, that he would deliver bark taken from the land, for the purchase of which the bond was given to *J, B. & Co.*, and apply the proceeds to the payment of the bond. The payee in the bond assigned it to one of the firm of *J. B. & Co.*, who were not parties to the contract, but afterwards assented that the purchase money of the bark should be so applied; and the bark was sold and delivered to them accordingly. HELD:

That it was not competent for the principal, and *J. B. & Co.*, to apply the proceeds of the bark to any purpose inconsistent with such contract, without the consent of the sureties.

If *J. B. & Co.* received bark enough to cover the amount of the note, and the assignee assented to the order to pay it, it was paid, and the parties between themselves, cannot afterwards revoke the payment, where the rights of third parties are concerned.

By such payment the sureties are discharged, and their liability cannot be revived by any subsequent arrangement by the principal and *J, B. & Co.*, to give the fund arising from the bark a different application.

This fund was dedicated to the payment of the bond, and the assignee having

notice of this fact, and assenting to it, the proceeds of the bark in his hands, were applicable to the bond, in the first instance; and as soon as he became its owner, by assignment, the law regards it as paid.

As a general proposition, it is true, that where a contract is made by a principal with a third party, to pay a debt where sureties are concerned, the latter must be parties to such contract, in order to make it binding upon such third party, and irrevocable.

But if such third party has, in any way, assented to the application of the fund to a particular debt, with notice that such direction was given to it to indemnify sureties, or if he receives it with that understanding, he has acquiesced in the agreement, and it cannot be changed without the assent of the sureties.

A security thus given, and a fund thus pledged, must enure, by operation of law, to the benefit of sureties, and cannot be afterwards diverted to their prejudice, and the depository will be bound to apply it as directed, whether the sureties are expressly parties or not.

The *assent* of *J. B. & Co.*, to apply the proceeds of the bark to the payment of the bond, was sufficient, without their being parties to, or *notified* of, the contract between the principal and his sureties.

Notice to one partner of a firm is notice to all.

An objection to a witness, on the ground of interest, should be made when the interest of the witness is first disclosed to the party; it must, at least, be made in a reasonable time after it is known.

The evidence of a witness was suffered to go to the jury without objection, and rebutting testimony was offered, and other witnesses examined, and exceptions taken, during all which time, the deed, disclosing the witness' interest, was in the hands of the counsel of the opposite party. HELD: That, under such circumstances, the objection comes too late.

APPEAL from *Frederick* county court.

This was an action of *debt*, instituted, originally, by *Isaac Baugher*, the testator of the appellants, upon two single bills, for $450 each, executed on the 23d of February, 1844, by *Samuel Duphorn*, as principal, and the other appellees as his sureties, in favor of *James Wilson*, administrator, *d. b. n.*, of *Frederick Beard*, and payable on the 1st of August, 1844 and 1845, respectively, and assigned by *Wilson* to *Isaac Baugher*, the plaintiff, by assignment in writing, at the risk of the latter, on the 22nd of October, 1844, and 30th of September, 1845, respectively. The pleas and issues are fully stated in the opinion of this court.

1st EXCEPTION. The plaintiffs offered in evidence. the

single bills in question, the execution of which, with the as-
signment of them, was admitted.    Defendants then offered
the depositions of *James Wilson*, the assignee of said single
bills, and *John Duphorn*, and the testimony of *John Snouffer*,
proving the facts which are fully stated in the opinion.    To
the testimony of the last witness, who proved that, in July,
1844, when part of the bark was delivered, according to the
agreement proved by the other witnesses, to *Joseph Baugher
& Co.*, of which firm, *Isaac Baugher*, the plaintiff, was a part-
ner, witness told *Joseph Baugher*, that if we, (the *Duphorns*,)
were not bound to deliver the bark for the payment of the land,
we would not haul you a stick, to which *Joseph Baugher*
made no reply, the plaintiffs objected, as irrelevant to the
issues, as not showing any connection of *Isaac Baugher* with
it.    But the court, (MARTIN, C. J., MARSHALL & WEISEL,
A. J.,) overruled the objection, and the plaintiff excepted :

2ND EXCEPTION.    The plaintiffs then offered rebutting testi-
mony, by *Eli Smith*, that the *Duphorns* received pay for all
the bark delivered to *Joseph Baugher & Co.*, by receiving cre-
dits on accounts and notes, due by the *Duphorns* to *Isaac
Baugher & Co.*, a firm, of which *Joseph Baugher* was not a
partner; and that, at the final settlement, nothing was said
about the application of the money to the payment of *Wilson's*
notes.    The bark was paid for by *Isaac Baugher & Co.*, by
virtue of orders from *Joseph Baugher & Co.*, upon them.    The
plaintiffs then offered, in evidence, a deed, executed by the two
*Duphorns*, after the institution of the suit, conveying among
other property, the land for which the single bills in question
were given to the appellees, *David Gamble* and *Robert Annan*,
in trust, to pay among other debts, said single bills.    Where-
upon the defendants asked the instruction first quoted in the
opinion, which the court granted, and the plaintiffs excepted.

3RD EXCEPTION.    The plaintiffs then asked the instruction,
that if a contract did exist between the *Duphorns* and the
*Baughers*, that the bark should be delivered to *Joseph Baugher
& Co.*, in payment of *Wilson's* notes, to which *Annan* and
*Gamble* were not parties, then the *Duphorns* and *Baughers*

had a right to alter the terms of said contract, and make any other application of the money they pleased, unless it be proved that the *Baughers* had notice of the contract between the *Duphorns* and *Annan* and *Gamble*, referred to in plaintiffs' prayer. The court refused this instruction, and the plaintiffs excepted :

The 4th and 5th exceptions are stated in full in the opinion.

6TH EXCEPTION. After all the evidence was offered to the jury, the plaintiffs objected to the admissability of the deposition of *John Duphorn*, on the ground that he is an interested witness; but the court refused to reject the evidence, and the the plaintiffs excepted, and, the verdict and judgment being against them, appealed to this court.

The cause was argued before SPENCE, MAGRUDER and FRICK, J.

By PALMER for the appellants, and
By RANDALL for the appellees.

The several bills of exceptions sufficiently indicate the points urged in argument.

FRICK, J., delivered the opinion of this court.

*Samuel Duphorn*, one of the defendants in the court below, had purchased of *John Wilson*, a tract of land for which he gave three bonds with the other appellees as sureties. Two of these bonds constitute the matter in controversy, upon the pleadings and issues in the case, which affirm that they have been paid.

At the time of the purchase of the land, it was agreed between *Samuel Duphorn* and his sureties, that bark should be taken from the land so bought, and should be delivered to *Joseph Baugher, & Co.*, (of which firm *Isaac* was a partner,) the proceeds of which were to be applied to the payment of these bonds. It does not appear that *Baugher & Co.*, were parties to this agreement; but bark exceeding in value the amount of these bonds was delivered to them in conformity

with the agreement. When the first bond became due, upon application to *Samuel Duphorn* for payment, *Wilson* was referred by him to *Isaac Baugher*, saying that he had received the bark for that purpose, and "he expected him to lift the bond." When *Wilson* called, *Isaac* admitted that bark had been received sufficient to pay the bond, but stated that he had a large account upon other matters against *Samuel Duphorn* and *John Duphorn*, his brother, (who were partners in the bark,) "nevertheless" he said to *Wilson*, "if you will assign the bond, I will pay you the money," *Wilson* accordingly agreed so to assign the bond "at *Isaac Baugher's* risk," who thereupon paid the money. So afterwards, when the second bond became due, *Isaac* called upon *Wilson*, and upon receiving a similar assignment, also paid the second bond.

*John Duphorn*, the brother and partner of *Samuel* in the bark, was also a party to the agreement of *Samuel*, with his sureties.

After the assignment of the first bond, (on the 22nd of October, 1844,) *Baugher & Co.*, in February 1845, settled debts due to them by *Samuel* and *John Duphorn*, with the proceeds of bark delivered to them, amounting to $753, and afterwards, in December 1846, some time after the payment of the second bond, a further settlement for bark was made between them, amounting to $1240. From these settlements the two bonds were excluded and retained by *Isaac Baugher*, and are now the cause of action in the present suit.

To the declaration in this case the defendants have put in five pleas, which may in subtance be thus abridged.

The *first two* are pleas of payment *at* maturity, and *after* the maturity of the bonds, to the assignee *Isaac Baugher*, in his life time.

The *third* is, that the defendants delivered the bark to the assignee *Isaac*, in full discharge and satisfaction of the bonds.

The *fourth*, that *Samuel*, one of the defendants, before suit, delivered bark to the value of $1200 to *Isaac* and *Joseph Baugher*, as partners, to be applied in payment of these bonds, which was received by *Isaac* with a knowledge of this intend-

ed application, before the assignment to him of the bonds, and that he did out of the proceeds of the bark, so pay these two bonds.

The *fifth*, that *Samuel* agreed with his sureties, that the bark taken from the land, should be applied to the payment of these bonds, and that in pursuance thereof, *Samuel* at, &c., did deliver to *Isaac* and *Joseph Baugher* bark to be so applied, the said *Isaac* knowing before the assignment, of said application, and that he did afterwards pay the said bonds out of the proceeds, &c.

On these pleas and the general replication, the issues are made up, and the instructions of the court upon the several prayers submitted at the trial, and also the verdict being in favor of the defendants, the present appeal is brought up by the plaintiffs in the case.

The hypothesis which the plaintiffs seek to maintain is, that whatever agreement, if any, subsisted between the *Baughers* and the *Duphorns*, as to the application of the proceeds of the bark, it was at all times subject to modification between themselves as debtor and creditor, and unless *Annan* and *Gamble* were parties to the agreement, they can have no right to complain of the revocation of it, or the altered direction given to the fund. It is contended that a contract made by a principal with a third party to pay off a debt, where sureties are concerned, to make it binding on such parties and irrevocable, it is necessary that the sureties should be parties to the agreement. And as a general proposition in the absence of other special circumstances, that may control or forbid the violation of such agreement, this is conceded. But a third party may have such knowledge or notice of the interest of the sureties, and may so far assent to their rights in the agreement, as to preclude him from diverting the payment and depriving the sureties of their contemplated indemnity. If he has in any way assented to the application of the fund to the particular debt, with a notice that such direction was given to it, to indemnify sureties, or if he receives the fund with that understanding, he has acquiesced in the agreement of the principal

with his sureties, and it is not in the power of either to change it without the assent of the others. A security so given and a fund so pledged must enure by operation of law to the benefit of the sureties, and cannot afterwards be diverted to their prejudice, and the depository will be bound to apply it as directed, whether the sureties are expressly parties with him to the agreement or not.

There is therefore no error in the instruction given by the court at the instance of the defendants: "that if the jury find from the evidence in the cause that there was a contract or agreement between *Annan* and *Gamble* and *Samuel* and *John Duphorn*, to *which Joseph Baugher & Co., assented,* that the purchase money to be paid by the *Baughers* for the bark, should be applied to the payment of the bonds, and that the bark was sold and delivered to them upon said contract, that it was not competent for the *Duphorns* and *Baughers* to apply the proceeds to any purpose inconsistent with such contract, without the consent of *Annan* and *Gamble*."

There was certainly evidence in the cause competent to go to the jury to establish such an assent between the *Duphorns* and *Baugher & Co.*, and that the money paid by *Isaac Baugher* to *Wilson*, the obligee, was paid in pursuance of it, and in liquidation of the notes. Theory to which the plaintiffs restrict this agreement and evidence is, that when the *Duphorns* should get the proceeds from *Baugher & Co.*, they were to pay the notes with the amount, and thus relieve the securities, and this it is said imposed no obligation on the *Baughers*. Concede it to be so, and yet it is not at all in conflict with the fact afterwards, that *Samuel Duphorn* as most convenient to all parties should direct *Wilson* to call and receive the money. And when *Wilson* accordingly informs *Isaac Baugher*, that the bark was delivered for the purpose, and that *Duphorn* expected the *Baughers* to lift the note, he admits the receipt of the bark, and upon an assignment of the note, he pays it. If the jury believe these facts, does it admit of a question that the defendant's pleas are maintained, and that the note is paid in conformity with the intention and agreement of the *Dup-*

*horns?* If the *Baughers* had received bark enough to cover the amount of the note, and *Isaac Baugher* assented to the order to pay, it was paid by his compliance. The law will so construct it and the parties between themselves cannot afterwards revoke the payment, where the rights of third parties are concerned. At all events by such payment the sureties are discharged. And if once discharged, how can the *Baughers* afterwards revive the obligation of the sureties, by any subsequent arrangement with the *Duphorns* to give to this fund a different direction? At the maturity of the second note *Isaac* calls himself on *Wilson*, without waiting to be applied to, and becomes the owner and assignee of this second bond or note. His firm had then in hand and afterwards upon the settlement, more than enough of funds and proceeds from the bark, to liquidate both the notes. These funds were in his hands dedicated to the payment of the notes. He had knowledge and notice of the fact, and he also assented to it as *Wilson's* testimony proves. Notwithstanding the subsequent misapplication of the funds, they must be considered as in his hands, *and only* applicable to these notes in the first instance, and as soon as he became the owner of the notes by the assignment, the law regards it as a payment of them, and thus the plea of payment to *Isaac Baugher* is supported, and substantially reaches the case in the view here presented. For there is not the slightest proof offered to sustain the pretext, that he intended and did become the *bona fide* purchaser of these notes, independent of the fund in the hands of *Baugher & Co.* devoted to the discharge of them.

The court below having thus properly granted the instruction asked by the defendants, with the same propriety rejected the prayer of the plaintiffs next succeeding it, that is the third prayer in the record.

It proceeds upon the hypothesis that although a contract did exist between the *Duphorns* and *Joseph Baugher & Co.*, that the bark was to be delivered to them, and the purchase money applied to the payment of *Wilson's* notes, yet if *Annan* and *Gamble* were not parties to the contract, they, the *Duphorns*,

and *Baugher & Co.* had a right to revoke it, *unless* the defendants should prove that *Joseph* and *Isaac Baugher had notice* of the contract existing between *Duphorn* and his sureties, that the bark should be delivered to said *Joseph* and *Isaac Baugher*, and that the purchase money was to be applied to the payment of the notes.

If the county court was right in the preceding instruction, that the *assent* of the *Baughers* to apply the proceeds of this bark to the payment of *Wilson's* notes, was sufficient, without being parties to the contract with the *Duphorns*, and the sureties on the notes, then it was not incumbent on the defendants to prove that they had *also notice* of the contract existing between the parties to the notes. The funds and the means placed in their hands were devoted to that particular purpose, and *Isaac* was distinctly so told and warned before he paid the notes. Sufficient then it was, that he so far recognized the arrangement and actually so applied the proceeds to that purpose. It was then not necessary that they should be notified of the contract between the others; more especially that *Isaac* and *Joseph, both* should have notice as the prayer requires. As partners, notice to either was notice to both. The prayer was therefore properly rejected.

The 4th prayer, (by the plaintiffs,) assumes that if before the institution of this suit, the *Duphorns* had received from *Isaac,* one of the firm, payment for the bark delivered in 1844 and '45; that the said bark was allowed in settlement between the *Duphorns* and *Isaac Baugher & Co.*, (another firm of which *Isaac* was a partner,) and applied to the payment of moneys due to that firm, with the assent of the *Duphorns,* then the plaintiffs are entitled to recover on the notes.

This is still the assertion in another form, that the *Duphorns* and the *Baughers* had a right to divert this fund, in the face of evidence from which the jury might infer that the notes were actually paid and satisfied, either to *Wilson* or to *Baugher,* the assignee, out of the fund. And if so, the *Duphorns* could have no right to demand of *Joseph Baugher & Co.*, the payment of the proceeds of the bark already applied; and the set-

tlement afterwards made by *Isaac,* by and between the two firms of which he was a member, and the *Duphorns,* was at his own risk. There was notice to him in the first interview between him and *Wilson,* before the assignment, that the bark was so appropriated to the payment of these notes, and upon this notice, he paid them and received the assignments. After this he could have no right by another settlement with the *Duphorns,* including all the bark, to revoke the previous payment to the prejudice of the sureties, whose equities were then distinctly known to him, by their names upon the notes in his possession, and the instruction here asked was properly refused.

The 5th exception (the plaintiffs,) avers: that there was no evidence from which the jury could infer that there was an agreement between the *Duphorns* and the sureties, that the bark taken from the land purchased, was to be delivered and sold to the *Baughers,* and the proceeds applied to the payment of the bills; and that the bark was delivered to, and received by them under such agreeement, of *which Isaac had notice* or knowledge when he *purchased* the notes.

Even supposing no testimony in the case which would expressly convey to *Isaac* the knowledge or notice of the agreement of *Duphorn* with his sureties, it must be admitted that he had notice of the dedication of this bark in the hands of *Baugher & Co.,* to the payment of these notes; and the first note when presented to *Isaac* by *Wilson* for payment, was notice to him of the names and position of the sureties, to whose benefit the payment was to enure, and against whom he took the assignment. There is ample testimony in the record to prove the agreement between *Duphorn* and his sureties; and upon these premises the jury had sufficient grounds to infer from the conditions connected with the delivery of the bark to the *Baughers,* and the proposed application of the proceeds, that the agreement of the parties to the notes was known to *Isaac.* And independent of this, the court could not be asked to instruct the jury that *Isaac "purchased"* these notes, when the question on the other hand submitted to them, was, whether he had not paid and extinguished them. This as-

sumption of the fact of purchase must be fatal to the prayer, as calculated to mislead the jury.

We have omitted to say that *Wilson's* testimony does not stand alone, but is supported by two other witnesses in the cause. *John Duphorn*, after stating that he became a partner in the bark after the purchase, says that it was delivered by himself and his brother, with the intention of paying the notes, according to an agreement by them with *Annan* and *Gamble*, and that upon one occasion he overheard *Isaac* in a conversation with his brother, say: "That he had conversed with *Joseph Baugher* about the matter, and they had agreed to say nothing about the store accounts, and pay that note or notes." No particular note or notes were specified, nor does he know or say that the *Baughers* knew of the contract. But *Snouffer*, another witness, testifies that he delivered the bark from time to time, and expressly told *Joseph Baugher*, that "if it was not that we, (meaning the *Duphorns*,) were bound to deliver the bark for the payment of the land, we would not haul you a stick."

Surely then the court could not tell the jury, that there was no evidence from which they could infer knowledge on the part of the *Baughers*. On the contrary, in connection with this testimony, they were bound to submit the whole to the jury, and properly rejected the prayer of the plaintiffs.

This testimony, however, has been excepted to by the plaintiff, but we think upon insufficient grounds. *John Duphorn*, it is said, is a partner in the bark, and a partner in the land, as is shown by the recital in the deed of trust subsequently executed by the *Duphorns* of the one part, and *Annan* and *Gamble* of the other, in 1848, and long after the assignment to *Isaac Baugher*, to secure the payment of these notes, which deed the plaintiffs produce in evidence. The deed recites that he became so interested after the purchase by *Samuel*; and it is objected to him that he is now interested in defeating these plaintiffs, thereby relieving this security of the land, which consequently enures to the benefit of the witness. But if he does defeat the plaintiffs in this action upon the notes, he

is still to refund to them as a partner with *Samuel* in the bark, which has then been overpaid by the *Baughers* to the amount of these notes. In either event his liability accrues, and his interest is balanced. For if the plaintiffs recover, he is equally liable over to *Samuel* for contribution as a partner, both in the bark and in the land.

But even if not so, the objection comes too late. In the progress of the trial after the testimony of *Wilson* had been read to the jury, this deposition of *John Duphorn* was introduced by the defendants, and *Snouffer* was then examined by them. The plaintiffs to rebut this testimony, examined *Eli Smith*, and afterwards introduced the deed from the *Duphorns* to *Annan* and *Gamble*. After all this evidence on both sides was in and made part of the first three bills of exception, and after all the other exceptions, the plaintiffs for the first time suggest this exception to the testimony. The objection is certainly not in due time, and should properly be made, when the interest of the witness is first disclosed to the party. *Starkie's Ev.*, 757.

The *deposition* which was filed in court, *avows* that *John* was half interested in the bark with his brother. At the trial, the plaintiffs had also in their hands the deed of trust confirming the fact of his interest in both the bark and the land. Yet they permitted the deposition to be read, and introduced the testimony of *Smith*, to contradict and explain it, and only after all the testimony and other exceptions were before the jury, take this objection. Under such circumstances it comes too late. It must at least be taken in a reasonable time after the objection is known to the party. 5 *Gill*, 120.

We are at a loss to perceive how the testimony of *Snouffer* " is irrelevant to the issue, as not showing any connection of *Isaac Baugher* with it." In the first place it shows the delivery of the bark to *Joseph Baugher & Co.*, and next, that *Isaac* was a partner of that firm with *Joseph*, to whom the the conversation of the witness was directed. It thus establishes one of the elements of proof from which the jury might infer notice to *Isaac* some months previous to the payment and as-

signment, that ths bark was delivered with a view to that payment. It is therefore both material and relevant to the issue; and in this as in all the other instructions of the county court, there is no error. The judgment below must be affirmed.

JUDGMENT AFFIRMED.