JOSEPH M. STREET *vs.* THE OLD TOWN BANK OF BALTIMORE.

*Principal and Surety—Individual notes as Collateral security.*

A railroad company applied to a bank, where, for several years it had deposited its funds, for a loan of $5000. .The bank refused to discount the company's note for that sum, unless each of its twelve directors would give his individual note for $500 as collateral security therefor. This was agreed to, and the company's note for $5000 was discounted, and the proceeds were placed to its credit. The note of each director, dated the 1st of May, 1884, recited that the company had given its note of even date therewith to the bank for $5000, payable thirty days from date, and pledged its receipts for the month of May in payment of the same, and that he agreed and promised, in case of default in the payment of said note at maturity, to pay the bank, thirty days from date $500. Before giving these notes, the board of directors of the company passed a resolution to the effect that all funds accruing in its treasury during the month of May next, should be set apart and applied to the payment of the first mortgage bonds of the company falling due on the first of said month, or so much of said funds as should be necessary to pay said interest. The receipts were duly paid into the bank; and the bank, by order of the company, paid the interest coupons on their bonds. The amount of the receipts, including the proceeds of the discounted note was more than sufficient to pay the interest and the note, if the company had permitted it to be so applied; but the bank allowed the company to overdraw its account, and when the note matured it was not paid. Subsequently the company passed into the hands of a receiver, and the bank brought suit against such of the directors as refused to pay their individual collateral notes. HELD:

That the bank was no party to any agreement between the company and its sureties, entered into no obligation to carry out any pledge the former had made to the latter, and did not agree or assent to receive the money, and apply it in accordance with such pledge; and that on the failure of the company to pay the note at maturity, the obligation of the directors on their individual notes became absolute.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayer:

If the jury find that the defendant executed and delivered to the plaintiff the paper sued on, for the purpose of inducing the plaintiff to discount the note of the railroad company offered in evidence, and that upon the faith and credit of said paper so executed and delivered by the defendant, the plaintiff discounted the said note of the railroad company, the proceeds of which went to the credit of said railroad company, if the jury so find. And shall further find that the said note of the railroad company was not paid at maturity, nor has been paid since, and that the paper sued on has not been paid, then the plaintiff is entitled to recover, notwithstanding that between the execution and delivery of the said note of the railroad company, and the maturity thereof, money to an amount exceeding the amount named in said note, with interest thereon, came to the plaintiff's bank by deposit of the railroad company, and that such money so deposited was the receipts of the said railroad for the month of May, 1884; provided they shall further believe that the plaintiff's bank was authorized by the railroad company to pay all its checks drawn on said bank, and signed by the treasurer of said railroad company, and that all of said money so paid into the plaintiff's bank as aforesaid, was drawn out by check of the railroad company, signed by its treasurer, or by its order applied to the payment of the coupons of its first mortgage bonds, prior to the maturity of the said note of the railroad company.

The defendant prayed the Court to instruct the jury as follows:

1. If they find that the defendant executed the note sued on in this case, and that it was accepted by the plain-

tiff, and that the receipts of the Maryland Central Railroad for the month of May, in the year 1884, to an amount sufficient to pay the note of five thousand dollars, offered in evidence by the plaintiff, were deposited by said railroad with the plaintiff prior to the maturity of the note, to which that sued on is collateral, and that the plaintiff knew such receipts were so deposited; and further find that said $5000 note was discounted by the plaintiff to raise funds for the payment of the interest on the first mortgage bonds of said railroad company maturing May 1st, 1884, then their verdict must be in favor of the defendant.

2. If they find that the defendant executed the note sued on in this case, and that it was accepted by the plaintiff, and that the receipts of the Maryland Central Railroad, for the month of May, in the year 1884, to an amount sufficient to pay the note of five thousand dollars, offered in evidence by the plaintiff, were deposited by said railroad with the plaintiff, prior to the maturity of the note to which that sued on is collateral, and that the plaintiff, by the exercise of reasonable diligence, could have ascertained that such receipts were so deposited; and further find that said $5000 note was discounted by the plaintiff to raise funds to pay the interest on the first mortgage bonds of said company, maturing May 1, 1884, then their verdict must be in favor of the defendant.

3. If they find that the defendant executed the note sued on in this case, and that the same was accepted by the plaintiff, and that the receipts of the Maryland Central Railroad for the month of May, in the year 1884, to an amount sufficient to pay the note of five thousand dollars, offered in evidence by the plaintiff, were deposited by said railroad with the plaintiff prior to the maturity of the note to which that sued on in this case is collateral, and that the plaintiff knew such receipts were so deposited; and further find that said $5000 note was discounted by the plaintiff to raise funds to pay the interest on the first mort-

gage bonds of said company, maturing May 1, 1884, then their verdict must be in favor of the defendant, unless the jury shall further find that the defendant knew of and assented to an appropriation of such receipts by the plaintiff, otherwise than to the payment of the note to which that sued on is collateral.

4. If they find that the defendant executed the note sued on in this case, and that the same was accepted by the plaintiff, and that the receipts for the Maryland Central Railroad for the month of May, in the year 1884, to an amount sufficient to pay the note of five thousand dollars, offered in evidence by the plaintiff, were deposited by said railroad with the plaintiff prior to the maturity of the note to which that sued on in this case is collateral, and that the plaintiff, by the exercise of reasonable diligence, could have ascertained that such receipts were so deposited ; and further find that said $5000 note was discounted by the plaintiff to raise funds to pay the interest on the first mortgage bonds, maturing May 1st, 1884, then their verdict must be in favor of the defendant, unless they shall further find that the defendant knew of and assented to an appropriation of such receipts by the plaintiff otherwise than to the payment of the note to which that sued on is collateral.

5. If the jury find from the evidence that the defendant executed and delivered the note sued on in this case, and that the plaintiff accepted the same, and discounted for the Maryland Central Railroad Company the note for $5000, mentioned in the body of the note sued on, and entered the proceeds of said discount to the credit of said railroad company, and by its direction applied the same to the payment of the interest coupons on said railroad company's first mortgage bonds, maturing May 1st, 1884 ; and further find that the receipts of said railroad company for the month of May, 1884, to an amount (including the proceeds of said discounted note,) sufficient to pay said coupons,

and refund to plaintiff the proceeds of said discounted note applied by plaintiff to payment of said coupons, and also to pay all the checks drawn by said railroad company on said bank in said month of May, and before the maturity of said note, were deposited in said bank by said railroad company; and further find that plaintiff knew, or by due diligence ought to have known, that the money deposited as aforesaid was receipts of said railroad company during the month of May, 1884, and was authorized by said railroad company to apply said receipts, or so much thereof as were necessary to the payment of said coupons, then the plaintiff is not entitled to recover in this action.

The Court (STUMP, J.,) granted the prayer of the plaintiff and refused the prayers of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*Henry W. Archer*, for the appellant.

The agreement embodied in the resolution of the railroad company, and in the appellant's note to the bank, was an irrevocable pledge of the receipts of the railroad company in the month of May, 1884, for the payment of the note for $5000, and neither the railroad company nor the bank had any right to apply the money to any other purpose until said note and the untaxed coupons referred to were provided for and paid.

There was not merely a pledge of the fund, of which the bank had notice, and which was made a material part of the contest between the bank and the appellant, but there was an agreement executed by the subsequent deposit by the railroad company of its receipts in the month of May, in the bank which held the note, for payment of which they were pledged, and the note was in fact

paid before its maturity. *Baugher's Exec'rs vs. Duphorn, et al.,* 9 *Gill,* 314; *Birchwell vs. Chautauqua Bk.,* 74 *N. Y.,* 290.

*William A. Hammond,* for the appellee.

The only question argued below was whether under the language of Mr. Street's note, which recited that the company had pledged its receipts for the month of May in payment of its $5000 note, the bank was bound to retain enough of the deposits of the company during the month of May, to meet said note. It is submitted that *not only was the bank not bound to do this, but it had no authority so to do,* and would have been liable in damages if it had refused to honor a check of the company, while it held the company's funds in its hands. A bank has no lien upon funds to meet a note not yet due. *Jordan vs. Nat'l Shoe and Leather Bank,* 74 *N. Y.,* 473; *Carman vs. Franklin Bank,* 61 *Md.,* 469.

Having funds it impliedly undertakes to pay checks. *Marzetti vs. Williams,* 1 *Barn. & Ad.,* 415; *Whitaker vs. Bank of Eng.,* 1 *Cr., M. & R.,* 744. And is liable for damages for neglect so to do. *Rolin vs. Steward,* 14 *C. B.,* 595; 1 *Chitty on Contracts,* 80.

MILLER, J., delivered the opinion of the Court.

The Maryland Central Railroad Company had for several years made its deposits in the Old Town Bank. These were checked out by the company's checks, from time to time, signed by its treasurer, and the usual depositor's account was kept by the bank. The company needed money to pay the interest on its bonds, which fell due the 1st of May, 1884, and applied to the bank for a loan of $5000. The bank refused to discount the company's note for that sum, unless each of its twelve directors would give his individual note for $500 as collateral security therefor. This was agreed to, and the company's note for $5000,

Street *vs.* Old Town Bank.

payable at thirty days, and dated the 1st of May, 1884, was accordingly discounted, and the proceeds placed to the company's credit in its account. The individual notes of the directors (one of whom was the defendant,) all bear the same date, 1st of May, 1884, and are all in the same form. Street's note is as follows :

"BEL AIR, May 1st, 1884.

"The Maryland Central Railroad Company having given its note of even date herewith to the Old Town Bank of Baltimore, for the sum of $5000, payable thirty days from date, and pledged its receipts for the month of May in payment of the same, I hereby agree and promise, in case of default in the payment of said note at maturity, to pay the Old Town Bank of Baltimore, thirty days from this date, the sum of five hundred dollars."

"J. M. STREET."

Just prior to the giving of these notes, on the 25th of April, the Board of Directors of the Company passed a resolution to the effect "that all funds accruing in the treasury of this Company during the month of May next, shall be set apart and applied to the payment of the interest of the first mortgage bonds of this Company falling due on the first day of said month, or so much of said funds as shall be necessary to pay said interest;" and we shall assume that the bank had knowledge of this resolution at the time it discounted the Company's note and received the collateral notes from the directors.

The receipts were duly paid into the bank, and the latter by order of the Company paid the interest coupons on their bonds. The aggregate amount of the receipts, including the proceeds of the $5000 note, was more than sufficient to pay the interest, and this note if the company had permitted it to be so applied. But during the running of the note, the Company checked out from the bank

more than $25,000, so that at its maturity the bank had no funds in hand to apply to the note. In fact, the company's account was overdrawn on the 1st of May about $2000, and on and after the maturity of the note was always overchecked. The authority of the treasurer to draw checks upon the bank was never countermanded by the Company, save by the resolution above cited, which related merely to the payment of the interest, and no notice of any countermand was ever given to the bank except as conveyed by that resolution. In the following autumn of 1884, the company passed into the hands of a receiver, and its note not having been paid, the bank brought suit against those of the directors, (including the appellant), who had refused to pay their individual collateral notes.

The action is defended upon the theory that the resolution and the agreement between the Company and Street, recited in the latter's collateral note, constituted an irrevocable pledge of the receipts for the payment of the $5000 note, and neither the company nor the bank, had any right to apply the money to any other purpose until that note and the unpaid coupons were provided for and paid, and as the receipts were sufficient for that purpose, the note was, in fact, paid before its maturity.

But we think it clear that this position is not tenable. The resolution simply set apart so much of the funds accruing in the company's treasury as might be necessary for that purpose, to pay the interest on its bonded debt, and this was carried out by the company by directing the bank to pay and take up the interest coupons which the bank accordingly did, and it still holds these coupons. As between the company and the directors who gave these collateral notes, the relation of principal and surety existed, and the bank was the creditor to whom the security was given. One of these notes was given by the appellant, Street, and it is before us for construction. It

*recites* that the company had "pledged" its receipts for the month of May for the payment of its $5000 note, and it is true that the bank, when it received his note, had notice by this recital of that pledge or promise, but by his note his promise to the bank was to pay to it in thirty days the sum of $500 "in case of default in the payment of the company's note at maturity." That note was not paid at maturity, and Street's obligation to the bank became absolute. This, as it seems to us, is the obvious construction and effect of this instrument.

The bank was no party to any agreement between the company and its sureties, entered into no obligation to carry out any pledge the former had made to the latter, nor did it agree or *assent* to receive the money and apply it in accordance with such pledge. Mere notice or knowledge that such a pledge or promise had been given by the company to the sureties, clearly would not have justified the bank in refusing to pay the checks afterwards drawn upon it by the company. The case is quite different from that of *Baugher vs. Duphorn*, 9 *Gill*, 314, which was specially relied on by the appellant's counsel. In that case a vendee of lands gave to the vendor bonds with sureties for the payment of the purchase money, and at the same time agreed with his sureties that he would deliver bark taken from the land to a certain firm and apply the proceeds to the payment of the bonds. The vendee assigned the bonds to one of the firm, who were not parties to this contract, but who afterwards *assented* that the proceeds of the bark should be *so applied,* and the bark was then delivered to them in accordance with this arrangement, and they sold it and received the proceeds. In this state of facts, the Court very properly held that it was not competent for the obligor in the bonds and the firm to apply the proceeds of the bark to any other purpose without the consent of the sureties, and that these proceeds constituted a fund *dedicated* to the payment of the bonds, and the as-

signee of the bonds having had notice of this fact and having *assented* to such dedication, the fund in his hands was applicable to the bonds in the first instance, and as soon as he received it the law applied it to their payment.

But here there was no such assent on the part of the bank, nor any such tripartite agreement between the bank, the sureties, and the company. The bank simply received the moneys of the company on deposit, and was bound to pay them out on the depositor's checks. When asked to discount the company's note, it refused to do so without receiving these individual notes as security, and they were given. Street, no doubt, gave his note upon the assurance by the company that its receipts for the month of May were pledged, or should be applied to the payment of the note for which he became surety, but the company failed to keep this promise or pledge, and for this failure it is neither reasonable nor just that the bank should be held responsible.

From this view of the case it follows that there was no error in the rulings of the Court below upon the prayers to which alone exception was taken, and the judgment must be affirmed.

*Judgment affirmed.*