### E. Cowles, executor of *Gad Cowles, against* Bacon.

In this state, where an execution has been levied on land, and the land set off, with an apparent satisfaction of the execution, but, by reason of a mistaken or fruitless levy, the debt has not in fact been satisfied, debt on judgment or *scire-facias* will lie.

Nor does it make any difference, that the creditor, when he levied his excution, had notice, from the record or otherwise, that the debtor had executed a conveyance of the land levied on, but erroneously supposed that such conveyance was fraudulently made, and was therefore, as to him, void.

Our records of deeds often furnish but imperfect information of the true state of the title ; the object of recording conveyances, being only to give notice of their existence, while their validity depends on other circumstances.

Where the plaintiff in an action of debt on judgment, claimed, that the debtor had, before the levy of an execution issued on such judgment, on certain land, conveyed such land to a third person, and therefore the plaintiff acquired nothing by his levy; the defendant offered evidence to shew, that the conveyance so made by him, was made for the purpose of defrauding his creditors, of whom the plaintiff was one, and was therefore void; so that the plaintiff, by his levy, obtained full satisfaction of the judgment declared on ; it was held, that how ungracious soever it might seem for the defendant thus to set up his own fraud, yet the evidence offered by him conduced to shew that the judgment was satisfied, and was, therefore, relevant and admissible for the purpose for which it was offered.

By our recent statute, (*Stat.* 86. § 142.) allowing parties, and other persons interested in the event, to testify in civil suits, such persons, when offered as witnesses, are placed on the same ground, as to competency, as disinterested persons ; their interest affecting their credibility only.

The court, in its charge to the jury, is not bound to state the law arising upon abstract questions.

It is a well established, just and salutary principle, that where one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is precluded from averring a different state of things as existing at the time.

THIS was an action of debt, on a judgment of the county court for the county of *Hartford*, rendered in March, 1821, for 206 dollars, 39 cents, damages, and 14 dollars, 40 cents, costs of suit.

The defendant pleaded the general issue, with notice of special matter to be given in evidence, *viz.* that *Gad Cowles*, the creditor, obtained an execution on the judgment mentioned in the declaration, and had it duly levied upon the right, title and interest of the defendant in a parcel of land in *Simsbury*, it being his life estate therein, in right of his wife, and the same appraised and set off to him, said *Gad ;* and that such proceedings were then had, that the entire right, title and interest of the defendant in the premises was duly set off to and vested in said *Gad ;* that seisin and possession of the premises was delivered to him ; and that neither he, nor his heirs or assigns, executors or administrators, have ever since been lawfully evicted ; and that, at the time of said levy and setting-off, said *Gad* had notice of the nature, character and extent of the defendant's right, title and interest in the premises, and has obtained, by virtue of said levy and proceedings, such right, title and interest of the defendant, of which the plaintiff had notice.

The cause was tried at *Hartford, January* term, 1852.

Upon the trial, the defendant proved, and it was admitted, that in the year 1821, *Gad Cowles*, the plaintiff's executor, took out execution on the judgment now sued upon, and had it duly levied on the life estate of the defendant in a certain parcel of land situate in *Simsbury*, (referred to in the above notice ;) that it was duly set off to said *Gad ;* and that all the steps required by law were taken to perfect such levy, and transfer the title to the levying creditor.

Upon the request of the defendant's counsel, the court instructed the jury, that this proceeding extinguished said judgment debt, and constituted a full bar to the present action, if, at the time of the levy, the defendant was the owner of the life estate so set off ; and it was agreed, that he was such owner, unless the deeds hereinafter mentioned conveyed away his title, before the levy, or were to be treated as if they did.

There was no evidence or claim before the jury, that *Gad Cowles*, or any one under him, had taken or held possession

of said land, after said levy, or had in fact availed himself
thereof, or of any right derived therefrom, except that it was
proved, and not denied, that immediately after the levy, one
*Phelps*, under the direction of *Gad Cowles*, entered upon the
premises, and cut and removed about one ton of grass, for
which he was immediately sued in trespass, and subjected in
damages.

It appeared, that immediately after the termination of that
suit, and the payment of the damages recovered, *Gad Cowles*
ceased to set up any claim or title to the premises under the
levy, or have possession thereof or benefit therefrom, but in
fact abandoned them, though he did not release them.

The defendant claimed, that said action of trespass was
brought by *Lydia G. Humphrey ;* but the plaintiff claimed
from the evidence, that it was brought by the defendant, in
her name, for his own benefit, and was conducted under his
authority ; and the plaintiff claimed, that it was fairly infer-
able, that the defendant forced *Gad Cowles* to pay such
damages for the defendant's benefit ; and thereby to drive
said *G. Cowles* from any longer relying on the fraud of cer-
tain deeds from the defendant to *L. G. Humphrey*, of the 2nd
of *January*, 1813, hereinafter called deed *B*, and of the 1st of
*November*, 1816, hereinafter called deed *C*.

The plaintiff, in order to remove the effect of said levy, by
shewing, that, at that time, the defendant had no interest in
said land, because he had previously parted with it, read to
the jury the deeds *B* and *C*, and four others, covering the
land levied upon.

It was proved and agreed, that these deeds were duly ex-
ecuted, acknowledged and recorded, except that the defend-
ant insisted, and offered evidence to prove, that the first deed
had never been delivered, and was recorded without a de-
livery.

The plaintiff insisted, that from the evidence, the jury
might find it was delivered, and thereafter recorded.

The defendant further claimed, and introduced evidence
to prove, that deed *B*, dated the 2nd day of *January*, 1813,
was voluntary, and as to *G. Cowles*, void ; and was, there-
fore, not in the way of said levy, on another ground, *viz.* that
the note on which said judgment was rendered, was given in
the year 1819, to renew a note of an earlier date ; which lat-

ter note was given upon the settlement of an earlier book account of the defendant, due said *G. Cowles*, which account had been commenced in 1812, and prior to giving the deed *B ;* but how much of it had been contracted before, or was due before, if any of it, did not at all appear ; nor what was the pecuniary condition of the defendant, when the deed *B* was given. It was, however, proved, and not denied, that he was then solvent.

The defendant claimed, as matter of law, that, if it was voluntary and without consideration, since the debt due to said *G. Cowles* had its commencement before said deed, and he had levied his execution as aforesaid, the deed was fraudulent and void, as to this judgment debt.

This the plaintiff denied, especially as the grantee in said deed was the mother-in-law of the defendant ; which latter fact was proved and admitted.

The court ruled this point in favour of the plaintiff, and against the defendant.

The defendant's counsel, in order to destroy deeds *B* and *C*, introduced the defendant to testify, and he did testify, and there was no other evidence ; and from that testimony the defendant's counsel claimed to have proved, by his oath, and so the defendant swore, that said deeds were made without consideration to said *L. G. Humphrey*, and —— *Humphrey*, (the first being mother as aforesaid, and the second being proved and admitted to be sister-in-law of the defendant,) and were given to defraud creditors of the defendant ; and that the defendant was, at the time, when said deed *C* was given, insolvent.

It was further proved, and not denied, that, notwithstanding said deeds *B* and *C*, the defendant ever thereafter continued in possession of the premises as before, for himself only, except that said *L. G. Humphrey* was, a while, in possession, after her last deed was given, and which the plaintiff insisted, from the proof, and especially from the fraudulent trust, was for her exclusive benefit, according to the directions of the defendant, the better to support said fraudulent deeds. The plaintiff insisted, that the defendant could not attack the deeds *B* and *C*, on account of said fraud, and especially, that he could not be the witness himself, to do it ; but the court decided, that it might be done, and that he

might testify to that effect, and avoid the deeds therefor, if that were indeed all. But the plaintiff denied, that the defendant was entitled to credit, if received as a witness ; and if he was entitled to credit, then the plaintiff claimed, *first*, that said deeds were good in fact, and were not given to defraud creditors ; in which event, the court instructed the jury, that said levy and set-off would not defeat this suit ; and *secondly*, if the jury should be satisfied from the testimony given by the defendant, as aforesaid, said deeds *C* and *B* were fraudulent against his creditors, and void, then the plaintiff claimed, and introduced evidence, especially the trust and the acts of the defendant, that from the evidence introduced by both parties, the deeds must be held to be good as against the defendant, in this action upon said judgment, because he claimed the following facts were established, *viz.* that the defendant had put his title in the premises into his mother and sister, as trustees, fraudulently to keep for himself ; that he did it to ward off and cheat his creditors ; that he had, ever since the execution of said deeds and said levy, kept possession of the premises for himself, and for a season, by said *Lydia G.*, and for the purpose claimed by the plaintiff, as aforesaid, and had, by his conduct and declarations, repelled the creditors, and especially said *G. Cowles*, by continuing and defending his trustees' title, as *bona fide ;* that he had advised to, and had in fact instituted, proceedings in trespass, to repel and drive off *G. Cowles*, after he had levied upon the premises ; and that he had accomplished his object, by said action of trespass, and the other matters, and saved the land for himself, pretending the absolute title of his mother and sister was *bona fide ;* and that *G. Cowles*, relying upon the goodness of the trustees' title, was induced to forego, and did forego, his rights, under his levy, by reason of said conduct, and said declarations of the defendant.

The court informed the jury, that if this was done, by the defendant, and especially for fifteen years after said levy, until he had now acquired title by adverse holding, and the execution title was now lost; that since the defendant was now sued for the debt itself, he cannot be permitted to say, that *G. Cowles* should really have fought out the title against himself and his trustees, because said title was really good

for nothing; that the defendant cannot blow hot and blow cold, as he pleases. Did he induce the said creditor to believe he took nothing by his levy, because of the goodness of his mother's and sister's deeds? If you find these things, as claimed by the plaintiff, there is no principle of law, or of morality, which will allow the defendant to claim, that the deeds of his mother and sister were not good.

As to the defendant in this action, the deeds of his mother and sister must, in such case, be taken as good, and the levy is no payment of the judgment. If these facts are not true, then, as to this point, the verdict should be for the defendant; for the judgment is paid by the levy.

The defendant claimed, and it was not denied, that when the said levy was made, the two deeds, *B* and *C*, were on record; and therefore he claimed from this, and from possession by said *Lydia G.*, *G. Cowles* must be held to have had knowledge; and hence the defendant claimed, that *G. Cowles* had knowledge of their existence and purport; and so the court ruled; and the defendant hence claimed, as matter of law, that the levy and set-off was made only to get whatever right the defendant had in the land, under the circumstances, and merely to try title; and that this was, *per se*, payment of the debt, even if the title was not really and truly in the defendant.

The court held otherwise; that the whole life estate of the defendant was appraised and taken by the levy, and not a mere contingent possibility; and if, at the time, the defendant had no title, the levy and set-off amounted to no payment, and this proceeding presented no bar to a recovery in the present suit.

There was no evidence introduced by the defendant, that *G. Cowles* intended to take less than a life estate.

The defendant claimed, that the present action was not brought within a reasonable time after the levy of said execution; and therefore, the present action could not be sustained.

The court informed the jury, that twenty years furnished presumptive evidence of payment.

But the plaintiff claimed, as a reason of the delay, that the defendant had no property which could be attached; that he continued, at all times, insolvent, and without property and

credit; and the present suit was brought as soon as any thing could be found to attach; the defendant having taken the benefit of the insolvent act, in 1831.

*Hartford*,
June, 1852.

Cowles, exr.
*v.*
Bacon.

The court instructed the jury, if these facts were established, there was no delay which prevented a recovery.

The following claims made to the court, are annexed as a part of this motion, verbatim, as they were handed to the court, on the trial, by the counsel of the defendant.

" We request the court to charge the jury, that if the execution was in due form of law, levied upon the land, and the land set off, and the execution properly returned and endorsed, satisfied, this action cannot be sustained.

Also, that if the execution was so levied, returned and endorsed, that no action of debt on the judgment can be sustained, until a legal eviction of the levying creditor, or what is equivalent thereto, has taken place.

Also, that, if an action of debt upon the judgment could be sustained at all, it could only be done so, after the question of title under the levy of the execution has been duly tested, by a suit.

Also, that if the creditors knew the state of the title, as it appeared of record, and then, with such knowledge, caused the execution to be levied and returned, and endorsed, satisfied, and entered into possession of the premises, this action cannot be sustained.

Also, that if such levy was made by the plaintiff's direction, and execution so endorsed and returned, that an action of debt upon the judgment cannot afterwards be sustained, until the question of title under the levy has been properly tested, by suit and trial.

Also, that in order to test the validity of such title, it should have been so tested, within a reasonable time after such levy.

Also, that as to the time which elapsed after the levy was completed, and the execution endorsed and returned to the court, this suit was not brought within such reasonable time.

Also, that if said execution was levied upon said property, while Mrs. *Humphreys* was in the visible and open possession of the land, this was notice to the levying creditor of the title, and he cannot maintain an action of debt on judgment till

the question of title under the levy had been duly tested by suit.

Also, that if said execution was, by the direction of the creditor, levied on said property, with notice of the state of the title, and of the claim, title and possession of Mrs. *Humphreys*, and for the purpose of testing the validity of her title, then this suit cannot be sustained, if said levy was, in other respects, regular and valid to transfer the title of the defendant.

That if the only title of Mrs. *Humphreys* was, by virtue of a fraudulent conveyance, made by the defendant, and received by her, without consideration, and with a view to protect the property from the defendant's creditors, and thereby to defraud the creditors of the defendant, that the creditor acquired a good and valid title to the property set off, by the levy and return of his execution; and that the judgment was thereby satisfied, and no action can afterwards be maintained on the judgment.

Also, that if the title of Mrs. *Humphreys* was by virtue of such fraudulent conveyance, no suit could be maintained upon the judgment, until the question of title had been duly tested, by a suit and trial, and decided against the levying creditor.

Also, that delivery is indispensable to give effect to a deed."

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*Hungerford* and *Welles*, in support of the motion, remarked *in limine*, that there was a perfect satisfaction of the execution, by the levy and return—a satisfaction of record. This is admitted by the plaintiff. But certain deeds are introduced, to prove, that at the time of the levy, the debtor had no title. These deeds were recorded, and Mrs. *Humphrey*, the grantee, was in possession. The creditor, therefore, had full notice of the state and condition of the title. They then contended, 1. That the charge of the court to the jury was incorrect in relation to the levy. This levy is not affected by the deeds *B* and *C*, admitting them to be valid to transfer the title to Mrs. *Humphreys*, the grantee. First, the setting off on execution is a statutory transfer to the creditor of such estate as the debtor has, without covenants—

a mere quit-claim. *Shaw* v. *Smith*, 9 *Yerg.* 97. *England* v. *Clark*, 4 *Scam.* 486. The proceeding is the same as a purchase at a sheriff's sale, and the same rules are applicable. If the title fails, the purchaser is without redress. *Smith* v. *Painter*, 5 *Serg. & R.* 223. *Murphy* v. *Higginbottom*, 2 *Hill,* (*S. C.*) 397. Secondly, it is a principle pervading every system of law, that an execution having been executed and returned satisfied, neither debt on judgment, nor *scire-facias*, will lie. *Lawrence* v. *Pond*, 17 *Mass. R.* 433. *McLellan* v. *Whitney*, 15 *Mass. R.* 137. *Gorham* v. *Blazo*, 2 *Greenl.* 232. The *English* law relative to writs of *elegit* strongly resembles our own. An *elegit* extended, is considered in law a full satisfaction, and an end of the suit. 2 *Wms. Saund.* 68. n. 1. And if there be a defect in the return or levy, another writ is granted, as with us. Thirdly, at any rate, an *eviction* is a condition precedent to a *scire-facias* or debt on judgment. But in this case, there has been no eviction. The proceedings in trespass were not intended or adapted to try any title. Fourthly, in this state, there are but two cases where debt on judgment or *scire-facias* can be sustained, after a set-off on execution ; first, where there has been an imperfect or irregular levy by the officer, so that no title passes ; (*Fish* v. *Sawyer*, 11 *Conn. R.* 545.) and secondly, where the execution has been levied on the wrong property, by mistake or through ignorance. There has no case been reported where a different doctrine has been held ; and it is believed, that no lawyer has any knowledge of any case like this, in either our superior or county courts, where the creditor has acted with full knowledge, and the proceedings have been regular. Fifthly, the effect of sustaining this action must be, to permit actions of debt on judgment, however antient, if any flaw in the title can be found, although there is no warranty. Sixthly, the burden of proof is on the plaintiff, to shew that he has got no title, if he avoids the levy. Seventhly, all the analogies of the law are against sustaining an action of debt on judgment, where the creditor has acted with full notice in causing the levy.

2. That the charge of the court was incorrect, in relation to the deed *B*, of 1813. The motion finds, that it did not appear what was the pecuniary condition of the defendant, when that deed was given. If the deed was voluntary, and

*Hartford,*
*June, 1852.*

Cowles, exr.
*v.*
Bacon.

without consideration, it was void as to this debt, which existed before the execution of this voluntary deed. The conveyance to the mother-in-law, could make no difference.

3. That the charge was incorrect, in relation to the fraudulent conveyances B and C. The first instruction as to these deeds, that if they were good and valid, the levy and set-off would not defeat the suit, has already been discussed, under the exception as to the levy. The second instruction, that the acts of the defendant after the levy, would prevent the levy of the execution from being considered as a satisfaction, even if the deeds were fraudulent and void, was erroneous. In the first place, if the deeds were void, the creditor obtained a perfect title by the levy. *Stat.* 406. *tit.* 20. § 1. *Smith* v. *Hubbs*, 1 *Fairf.* 71. *Phalen* v. *Clark*, 19 *Conn. R.* 421. Secondly, the acts of the defendant after the levy, could not divest that title, even if he had done what was imputed to him, of which there was not, and is not, the slightest proof. Thirdly, if those acts were really committed by him, even during fifteen years after the levy, the only effect would be, to prevent him from acquiring title by possession. Fourthly, there was no trust, unless the deeds import a trust, which they clearly do not.

4. That the court erred, in omitting to charge the jury, as requested by the defendant.

*T. C. Perkins,* contra, as preliminary to his discussion of the questions of law arising in the case, remarked, that the defence to this suit was *peculiar* in its character. The execution issued on the original judgment, was levied on land, which the defendant had previously conveyed away. The plaintiff hoped to prove those deeds fraudulent. The defendant procured an action of trespass to be brought against the creditor ; judgment was recovered against him ; and he gave up the possession. Now, the defendant claims, that his own deeds were fraudulent ; and that the plaintiff in fact obtained satisfaction ; and this he attempts to prove, by his own oath. The counsel then contended, 1. That the deed B, if not *fraudulent,* was, at least, *voluntary,* and therefore void, as to the plaintiff. As the case stands, the burden of proof, as to this fact, is on the defendant. He does not shew, that the

plaintiff was a *creditor*, at the date of this deed.   Nor, that *Hartford*,
June, 1852.
the defendant was then insolvent, or indebted.   1 *Sw. Dig.*
273. Cowles, exr.
*v.*
Bacon.

2. That the defendant could not in law impeach these
deeds, especially by his own oath.   The general rule is, that
a party cannot protect himself, by setting up his own fraud.
*Potter* v. *Yale College*, 8 *Conn. R.* 62.   *Barber* v. *Minturn*,
1 *Day*, 136.   But especially in this case, is the defendant
estopped to do this, first, by his deed.   1 *Sw. Dig.* 621.
Secondly, by his acts *in pais*.   1 *Sw. Dig.* 622.   *Brown* v.
*Wheeler*, 17 *Conn. R.* 353.   *Shelton* v. *Alcox*, 11 *Conn. R.*
249.   It would be of pernicious tendency were a party
allowed, under such circumstances, to attack his own deeds,
and contradict his own acts.   And in this case, it would
operate a gross fraud upon the creditor.

3. That the levy was not *per se* payment.   The statute
makes no such provision ; nor the common law.   Actions to
recover the debt, have been sustained, where the levy was
good on the face of it.   *Fish* v. *Sawyer*, 11 *Conn. R.* 545.
549. and cases cited.

4. That the action of debt on judgment, will lie.   *Fish* v.
*Sawyer*, *ubi sup.* 1 *Sw. Dig.* 573.

5. That the insolvency of the defendant sufficiently ex-
plains the delay, in this case.

6. That eviction, by action of ejectment, is unnecessary.

Storrs, J.   1. The first question presented on this mo-
tion is, whether the plaintiff's testator is to be deemed to
have obtained satisfaction of the judgment on which this ac-
tion is brought, by the levy and set-off of land upon the exe-
cution issued on that judgment, if there was an entire failure
of title in the defendant to that land, and said testator there-
fore got nothing by the levy and set-off.

It was anciently an established principle of the common
law of *England*, that an extent upon the land of the defend-
ant, returned and filed of record, is a full satisfaction and end
of the suit ; and therefore, that the plaintiff is not entitled to
any further means of satisfaction, by writ, action or execu-
tion.   And if the tenant by *elegit*, were divested of the
lands so held under that writ of execution, by one having a
title paramount to his own, that is, a better title than the
debtor from whom he extended the lands, the rule of law,

that the debt was considered satisfied by the extent, remained unchanged and unaffected, by this circumstance ; and the creditor could not afterwards resort to any other writ, or have any other remedy for the portion of his debt thus deemed to be satisfied.   The reason upon which this principle was adopted, was, that the creditor elects to hold the land for so many years till the debt be satisfied out of the rents and profits, and the judgment-roll shews, that it was satisfied by the *elegit*.   This rule was so manifestly unjust, that in the thirty-second year of the reign of *Henry* VIII. a statute was enacted, for that reason expressed in its preamble, by which it was provided, that where the creditor is lawfully divested of the land so delivered to him on such extent, he may have a writ of *scire-facias* against the defendant ; and thereupon, if no sufficient cause, other than the acceptance of said land on the former writ of execution, is shewn, to bar the said suit, a new writ or writs of execution on the judgment, of the like nature and effect as the former, for the residue of the debt unsatisfied by such former execution ; and the same provision is re-enacted, in similar terms, by the 8th *Geo.* 1. *c.* 25. ; under which provisions the plaintiff, on the new writ of execution, has the same privileges as on the issuing of the original *elegit ;* that is, if the plaintiff can have no fruit of it, he may sue out a *scire-facias* against the debtor's goods or chattels, or a *ca. sa.* to take his person in satisfaction of the debt.   The courts in *England*, early after the first of these statutes was passed, decided that the equivalent remedy of debt on judgment would lie, if the creditor thought fit, in lieu of a writ of *scire-facias*, which action of debt may now be brought on the unsatisfied judgment, at any time, although further writs of execution cannot be issued, without a *scire-facias*.   (See *Foster* on the writ of *Scire-Facias*, 52. & seq.)

In this state, the ancient *English* common law rule has never been adopted ; but the practice has uniformly been in conformity with the principle, that where there is no real, but only an apparent, satisfaction of the execution issued on a judgment, by reason of a mistaken or fruitless levy on lands, debt on judgment, as well as *scire-facias*, may be brought to obtain satisfaction.   The course of the authorities on this subject is given in the case of *Fish* v. *Sawyer*, 11 *Conn. R.* 545. in which we understand the court to approve and estab-

lish that practice, and to decide, that in all cases, debt on judgment lies where an execution is fruitless, by reason of a mistaken or void levy on land.

*Hartford,*
June, 1852.

Cowles, exr.
*v.*
Bacon.

And we see no just reason for the limitation of this principle for which the defendant contends, by which it should be held not to apply to cases, where, as in the present, the plaintiff's testator, when he caused his execution to be levied, had notice from the records, or otherwise, that the defendant had executed a conveyance of the land levied on, but erroneously supposed that such conveyance was fraudulently made, and was therefore, as to him, void. Such a mistake constitutes no just reason why the defendant should not pay the unsatisfied balance of the debt. The former neither got, nor did the defendant lose, anything, by this mistaken levy. Is the latter to go quit of his obligation, when it has not been discharged, by any mode known to the law, and therefore remains in full force, merely because the former has acted on a mistaken belief that the land levied on belonged to the defendant, and not to the person to whom he had ostensibly conveyed it? Or, is the former to be thus punished, by a forfeiture of his debt, for the benefit of his debtor, for erroneously supposing, that such conveyance was actually or constructively fraudulent, and as to himself void, and for trying to avoid it? It must, indeed, be some very stubborn rule of law which would be held to produce such an unrighteous result. Nor on this point can the grounds on which the testator formed his opinion, be examined, for the purpose of determining whether he had reasonable cause for it; or whether such opinion was really entertained, or not; because it has no bearing on this question of right and justice between these parties. It may, however, be observed, that our records of deeds often furnish to creditors of the grantors but very imperfect information of the real state of titles. They sometimes disclose the invalidity of them as to creditors, when they are only constructively fraudulent, but of course, they never do, when they are actually so. And the object of recording conveyances, is, only to give notice of them; but their validity depends on other circumstances.

This action is therefore sustainable, notwithstanding this objection.

2. The next question is, whether it was competent for the

defendant to shew, that the deed from himself to Mrs. *Humphreys* was given for the purpose of defrauding his creditors. If, as the plaintiff claims, it was not, the whole defence to the action fails; and therefore, a decision of the questions, afterwards made on the trial, is unnecessary. The evidence offered by the defendant, was introduced, for the purpose of avoiding the effect of the conveyance from the defendant to Mrs. *Humphreys*, which had been produced by the plaintiff, and to shew, that that conveyance was executed under such circumstances that it was void, as against the plaintiff's testator; and that the latter, therefore, by virtue of his levy and set-off on his execution, obtained full and legal satisfaction of the judgment declared on; which was the defence relied on, by the defendant. This being the state of the question, as it is thus presented, it should be viewed singly, and independently of the effect of the conduct and representations of the defendant after the levy and set-off, whereby the plaintiff's testator may have been induced not to rely on those proceedings, but to treat them as ineffectual; which gives rise to a subsequent question in the case, and one to be considered hereafter.

However ungracious it may seem for the defendant thus to set up his own fraud in that conveyance, we are of opinion, that, as this question was presented, he was at liberty to do so, for the purpose stated. There cannot be a doubt, that this evidence conduced to prove, that the judgment was satisfied, and was, therefore, in its nature, relevant, for the purpose for which it was offered. It would, as a general rule, be competent for the defendant to shew, that he had not been, by conveyance or otherwise, divested of the estate, at the time of the levy and set-off, because their effect, in that case, would be to vest that estate in the creditor under the levy, and thus to produce a satisfaction of the judgment, which would constitute a good defence in this action. The question, then, is, whether the circumstance that the conveyance was executed by the defendant, with a fraudulent intention as to his creditors, including the plaintiff's testator, creates an exception to this rule. The effect of that fraud would be, to make the conveyance voidable, by those creditors, at their election. If the testator chose to avoid it, as he did, by taking the land on his execution, as though the conveyance

had not been made, such appropriation would clearly be a satisfaction of his debt, of which the defendant might avail himself, in an action on the judgment. If it were otherwise, he might be repeatedly compelled to pay the same debt. The question arising upon that conveyance, respects only the title to the land. That is a question, not between the levying creditor and the defendant, but between the former and the grantee of the defendant. The former is neither a party nor privy, but a stranger to, the deed of conveyance ; nor does he claim under it ; and for that reason, he is at liberty to contest it with the defendant's grantee. The defendant has no interest in that dispute, because if the creditor should not succeed in avoiding the deed, and recovering the land, the title would remain in such grantee, to whom the title has passed by the deed, as between him and the defendant. The attempt of the defendant, therefore, to shew the deed to be fraudulent, if successful, would not defeat, but establish, the creditor's title to the land, which the defendant should plainly be allowed to do, because if that title is established, the judgment of the creditor is satisfied, and he has no legal or just claim in this action. The plaintiff objects to this proof by the defendant, on the ground that it was a violation of the legal maxim, that no one shall take advantage of his own wrong. That maxim, however, is not to be taken in an abstract, universal sense, and has no application to this question. As applicable to a case where a person undertakes to set up his own fraud, it only means, that he shall not be allowed to acquire, through the medium of his deception, any right or interest against one who may be thus defrauded. *Broom's Legal Maxims, pp.* 209. 215. 217. The object of the rule is, to discourage dishonest practices, by depriving the perpetrator of the benefit of them. But in the present case, the defendant derives no benefit or advantage from shewing the fraud, which he offers to prove ; on the contrary, the establishment of it would necessarily deprive himself of the benefit originally contemplated by it, and enure to the benefit of the plaintiff's testator, the person who was intended to be defrauded, by re-instating him in the condition in which he was, when the fraud was attempted. To the suggestion, that it is unjust in the defendant thus to attempt to defeat this suit, it is sufficient to reply, that this is begging

*Hartford,*
June, 1852.

Cowles, exr.
*v.*
Bacon.

the question ; for that depends on whether he succeeds in proving that the plaintiff's claim is satisfied.

3. The further claim of the plaintiff, that it was not competent for the defendant to support this ground of his defence, by his own testimony, is without foundation. By our recent statute, altering the rule of the common law in regard to the competency of parties as witnesses, and allowing them to testify in civil suits, they are placed, in this respect, on the same ground, and may testify as fully, as disinterested persons. The defendant, therefore, became a witness generally, and, subject to the proper detraction from his credibility growing out of his situation, as being interested, might testify to the facts in question, like other witnesses.

4. We think, that the defendant has no reason to complain of the ruling of the court below, on his claim, that the deed of *January* 2, 1813, was void, as to the judgment debt declared on, on the ground that it was *voluntary and without consideration.* Whether the deed was void on that ground, would depend on facts as to the existence of which no evidence was adduced. It was proved, and not denied, that the defendant, when the deed was executed, was solvent ; but there was no evidence to shew, whether any part of the debt embraced in the judgment was then due, or what was then the pecuniary condition of the defendant. 1 *Swift's Dig.* 278. The claim made on this subject, was, therefore, merely abstract, in its character ; and the court was not bound to state the law arising on facts of which there was no proof.

5. The defendant excepts to the charge below, as to the effect of his conduct and representations to the plaintiff's testator, subsequent to the setting off of the land, by the latter, on his execution. The plaintiff claimed to have proved, that the defendant, (provided it were true, that he made the conveyances, as he claimed, for the purpose of defrauding his creditors,) after the completion of the proceedings on the execution, by a course of conduct and declarations on his part, respecting those conveyances, which were calculated, and intended by him, to induce the plaintiff's testator to believe, that they were made honestly, and that therefore, the title of the grantees was unimpeachable and valid, had deceived and misled him, and induced him to believe, that those conveyances were in fact of the character they were

thus represented to be ; and that, under the influence of that belief, he had been induced to give up the rights which he had acquired, by virtue of his levy, and to abandon the land, and prevented from asserting or relying on his title thereto, until he had lost the title acquired under his execution. Those declarations and that conduct are detailed in the motion.    There can be no doubt, and indeed it is not questioned, that they were, in their nature, calculated to induce such a belief and course of action, on the part of the testator.    The jury were instructed, that if the facts were true, as thus claimed by the plaintiff, the defendant was estopped from claiming that those conveyances were not good.    In our opinion, that charge was clearly correct.    We cannot conceive of a case, which more directly comes within the well-established and most just and salutary principle, that where one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a different state of things as existing at the time.    17 *Conn. R.* 345. 355.    18 *Conn. R.* 138. 443.    The injustice of allowing the defendant, under the circumstances of the present case, to retract or deny the truth of these representations, by which he induced the testator to believe that the conveyances in question were valid, and to treat them accordingly, is too palpable to require argument.

Our opinion is, that a new trial should not be granted.

In this opinion the other judges concurred.

New trial denied.