## CHAMBERS v. COCHRAN AND BROCK.

1. **Sheriff's sale:** VACATING SALE. Under section 3321 of the Revision of 1860, where any person shall purchase real estate in which the debtor has no such interest as that a judgment is a lien upon it, and the fact is not known to the purchaser, the District Court shall, upon motion of the purchaser, notice having been given to the debtor, set the sale aside.

2. **Surety:** DISCHARGE. The general rule is, that whatever discharges the principal discharges the surety.

3. —— SURETYSHIP ALIUNDE. When the obligation of one party, as surety only, does not appear upon the face of a note, it may be shown *aliunde* and by parol; and a creditor cannot violate the duties which a knowledge

| | |
|---|---|
| 18 | 159 |
| 117 | 13 |
| 117 | 331 |
| 18 | 159 |
| f125 | 724 |
| 18 | 159 |
| 136 | 220 |
| 18 | 159 |
| f139 | 179 |

of the fact of suretyship imposes upon him, notwithstanding it does not appear upon the face of the note.

4. —— JUDGMENT. A judgment does not abrogate the relation of suretyship between the parties, and the duties of the creditor with reference thereto.

5. —— LACHES OF CREDITOR. A judgment creditor is not bound to sue out an execution in order to preserve his rights against the surety (unless when requested so to do in writing), although such omission results in the loss of a lien on the property of the principal. *Aliter* where he voluntarily surrenders, without the consent of the surety, an actual lien, or withdraws, to the surety's prejudice, an execution after actual levy.

6. Judicial LEVY AND SALE. A sale of real estate which was not the property of the defendant, under execution, and permitting the sale to remain uncancelled, the plaintiff having no knowledge of the defect in the title, will not discharge a surety who has not relied upon such apparent satisfaction of the debt and surrendered securities, or failed to take security while the principal was solvent, or been otherwise prejudiced by reason thereof, or where such sale was induced by fraudulent representations made by or with the knowledge of such surety.

7. Practice: FILING EVIDENCE. In the absence of a rule of court, the correct practice in equitable trials, by the first method, is, that all evidence, documentary and written, shall be filed, or notice given, before the trial commences. If this is not done, on a showing being made of surprise, the cause should be continued.

8. Judicial sale: DELAY. Acquiescence in a judicial sale may be inferred from long delay in making complaint; but not where the party complaining has been without knowledge of the facts, and intervening rights have not attached.

*Appeal from Polk District Court.*

FRIDAY, DECEMBER 23.

APPLICATION TO VACATE SHERIFF'S SALE. The plaintiff, Chambers, at the August Term, 1858, obtained a judgment against the defendants, William H. Cochran and A. D. Brock, in the District Court of Polk county, for $439.53 and costs. This judgment was founded upon a note executed by the defendants to the plaintiff. Both were apparently principals, but Brock was in fact the surety of

Cochran. In December, 1858, execution issued on this judgment to the sheriff of Green county (some 55 or 60 miles distant from the county seat of Polk county, as shown by the testimony), and on the 5th of February, 1859, certain parcels of real estate were sold thereunder to the plaintiff as the property of the defendant, Cochran, and in full satisfaction of the execution. The writ was levied by the sheriff without any special directions from the plaintiff's attorneys, who resided at Des Moines. The sheriff of Green county informed them of the levy, that the lands belonged to the defendant and were free from incumbrances. The plaintiff resides in Ohio, and his attorneys had no other knowledge of the title except this information from the sheriff. Acting upon this knowledge, and in the belief that defendants had title, the plaintiff's attorneys directed the sheriff to bid in the property for the plaintiff, which was accordingly done February 5th, 1859. No transcript of the judgment was ever filed in Green county. In due time the plaintiff obtained a sheriff's deed. On the 20th of July, 1861 (over two years after the sheriff's sale), the plaintiff served the defendants with notice that a motion would be made, based upon the above facts, and upon the further fact that no title was acquired by him at said sale, to set aside the sheriff's sale and deed. This motion was duly made, and was accompanied with a quit-claim deed to the defendant. This motion is not resisted by Cochran, but is resisted by Brock, chiefly on three grounds, viz.: 1st. He claims that Cochran had title, or if not, then 2d. That he was only surety for Cochran; that to indemnify him, Cochran, Feb. 23d, 1858, made to him (Brock) a mortgage on about four hundred acres of land, of value sufficient to protect him, which mortgage was duly recorded. That more than two years after the sheriff's sale to the plaintiff, viz., February 6, 1861 (and before notice of the application to set aside the sale had been given him), he canceled this

mortgage of record in the full belief that the plaintiff's
judgment was satisfied and paid. He alleges Cochran's
present insolvency, and claims that it would be inequitable
to set aside the satisfaction of the judgment, which remained
without objection from February 5th, 1859 (date of sheriff's
sale) till July 20th, 1861 (date of service of notice to set
aside the sale). 3d. Brock claims that the sale should not
be set aside as to him, because the principal, Cochran, con-
tinued to be solvent for more than a year after the sheriff's
sale; that he held a mortgage from Cochran on a large
amount of chattel property to secure him against *other*
liabilities, most of which were paid or removed, and as the
judgment of the plaintiff was satisfied in February, 1859,
he allowed, on the strength of such satisfaction, which he
otherwise would not have done, Cochran to sell and dis-
pose of said personal property in 1860 and 1861; that
he has disposed of nearly all of it, and is now insolvent.
In May, 1862, the cause was transferred to the equity side
of the court on the defendant's motion. At the August
Term, 1863, an order or decree was made setting aside the
sheriff's sale as to both defendants, and awarding a new
execution to be enforced, in all respects the same as if no
sale had ever been made. Brock appeals. The other facts
will appear in the opinion.

*William Phillips* for the plaintiff.

*M. D. & W. H. McHenry* for the defendant.

DILLON, J. — I. "When," says the statute (Revision,
§ 3321), "any person shall purchase at sheriff's sale any
1. SHERIFF'S real estate on which the judgment, upon which
SALE: vaca-
ting sale. the execution issued, was not a lien at the time
of the levy, and which fact was unknown to the purchaser,
the District Court of the county shall set aside such sale on
motion, notice having been given to the debtor," &c. As

the plaintiff's judgment was rendered in Polk county, and no transcript thereof was ever filed in Green county where the lands were situated, the judgment cannot be said ever to have been a lien upon them. And hence the plaintiff's case is clearly within the *letter* of the statute. But as such a construction would authorize the setting aside of the sale in this case, even if the defendant in the suit had title, which would be unreasonable, the statute should not be so construed. The substantial meaning of the law is this: if the debtor has no such interest as that a judgment is a lien upon it, and this fact is not known to the purchaser, then the latter, as he gets nothing by the sale, may have it set aside.

As to some of the lands purchased at the sale, Cochran had no title or pretense of any. As to other tracts he held title bonds where time was of the *essence of the contract,* and containing other stringent provisions, and on which bonds payments had been made, though the time limited for payments had elapsed before the sheriff's sale. As to one tract he had a deed from one Blanchett, but it quite satisfactorily appears that Blanchett's title was based upon a title bond on which nothing was paid after he received it, and which was likewise past due. Add to this that the defendant, Cochran, according to his own testimony, in the presence of Brock, told the sheriff that these lands were his, and not incumbered except by a mortgage to Brock, to indemnify him against this very claim, upon which information the sheriff acted in making the levy, and upon which also the plaintiff's counsel acted in making the purchase, and a clear case is made out authorizing and requiring the court to set aside the sale as to Cochran. Cochran practiced a fraud upon the sheriff, as he afterwards admitted. On being inquired of by the plaintiff's attorney why he turned out these lands to the sheriff on the execution when he had no title, he answered that "he wanted

to get Brock out of the scrape, as Brock had been his particular friend."

Under these circumstances it is plain that Cochran, the principal, has no equity to insist that the judgment is *paid*, or to resist the setting aside of the sale, and the restoration of the plaintiff to his rights under his judgment. This judgment was satisfied only in form. It was not satisfied in law or really. The satisfaction was only apparent. Whatever may be the rule without the statute as to what, with respect to the title, the purchaser must show to set aside a sheriff's sale (*Dean* v. *Morris*, 4 G. Greene, 312, and cases there cited; *Reed* v. *Crosthwaite*, 6 Iowa, 219; *Ritter* v. *Henshaw*, 7 Id., 97; *Cameron* v. *Logan*, 8 Id., 434), it is clear, under the statute, that the purchaser, who obtains nothing of value, and who has acted under a misapprehension as to the state of the title, may have the sale vacated. And so it would probably be without the aid of the statute (*Cowles* v. *Bacon*, 21 Conn., 451; *Fish* v. *Sawyer*, 11 Id., 545; *Newland* v. *Baker*, 21 Wend., 264), certainly where, as in the case under consideration, he has been misled as to the title by the false representations of the debtor.

II. The more difficult questions relate to Brock, the surety of Cochran. That he was surety, is undisputed in the testimony. That the plaintiff *knew* him to be so, which, of course, would be essential to entitle him, against the plaintiff, to the rights of a surety (*Carpenter* v. *King*, 9 Metc., 511; *S. C.*, 2 Am. Lead. Cases, 380, and authorities app., 411 *et seq.*; 6 A. A., 504, and cases cited *infra*), is not expressly proved, but may be inferred from the circumstances in testimony, which need not be recapitulated. We give to the appellant the benefit of any doubt upon this point, and in the further treatment of the case assume the plaintiff's knowledge of Brock's suretyship for Cochran.

2. SURETY: discharge. The obligation of a surety, being accessorial in its nature to a principal obligation, it follows,

in general, that whatever discharges the principal, discharges likewise the surety. *Ames* v. *McClay*, 14 Iowa, 281, 284. But the converse is not always true; and the surety may be discharged, though the principal may remain bound. It is true that in the case at bar the note upon which the plaintiff's judgment was founded did not disclose on its face that Brock was surety, but conformably to the decisions of other courts (*Carpenter* v. *King*, *supra*, and authorities there referred to), this court held that the fact of suretyship may be shown *aliunde* and by parol. *Kelley* v. *Gillespie*, 12 Iowa, 55; *Corrielle* v. *Allen*, 13 Id., 289. And as a judgment does not abrogate the independent and collateral *fact* of suretyship, this relation continues even after judgment, and the creditor cannot violate the duties which a knowledge of this relation imposes upon him without being answerable for the consequences of such violation. *Carpenter* v. *King*, *supra*; 2 Am. L. Cas., 380; *Com.* v. *Miller*, 8 Serg. & Rawle, 452; *Com. Bank* v. *W. R. Bank*, 11 Ohio, 444; 18 Id., 54; *Newell* v. *Price*, 4 How. (Miss.), 684; *Carpenter* v. *Denon*, 5 Ala., 710; *Cowen* v. *Colbert*, 3 Geo., 239.

3. —— suretyship aliunde.

4. —— judgment.

Now it is perfectly clear, upon the authorities, that the plaintiff was not bound to sue out an execution in order to preserve his rights against the surety; certainly not, without a request in writing (Rev., ch. 75), if even then; although his *omission* to do so result in the loss of a lien on the property of the principal debtor. *Canton Bank* v. *Reynolds*, 13 Ohio, 84, 104; *United States* v. *Simpson*, 3 Pa., 437; *Munsdorf* v. *Singer*, 5 Watts, 2 Am. L. C., 342, for other authorities.

5. —— laches of creditor.

Of course it is otherwise where, by some voluntary *act* of the creditor, he surrenders without the consent of the surety an actual lien, or withdraws to the surety's prejudice an execution after an actual levy upon

6. JUDICIAL levy and sale.

the goods of the principal. Then, if loss occurs, it will fall on the creditor, not on the surety. There would be no loss, and of course the doctrine would not apply, if the judgment was a lien on the land, and this lien still subsisted notwithstanding the withdrawal. *Carpen* v. *Devon*, 5 Ala., 710, and cases cited; 2 Am. L. C., 344; also *Findley* v. *Bank*, 10 Ohio, 59; 13 Id., 84, 104; *Baker* v. *Davis*, 2 Foster, 27; *Sapen* v. *Young*, 6 Gill. & J., 2463. But the case at bar, so far as concerns the surety, does not fall within this principle. The plaintiff did not relinquish any lien or levy. On the contrary, he endeavored to make his judgment from the principal's supposed property, and instead of releasing or relaxing his hold upon it, prosecuted those endeavors to a sale. The defendant's case more nearly falls within *Harris* v. *Brooks*, 21 Pick., 195; *Carpenter* v. *King*, 9 Metc., 511; and *Gordon* v. *McCarty*, 3 Whart., 407.

In *Harris* v. *Brooks, supra*, it was held that a parol declaration of the holder of a note to the surety, that he would exonerate him and look to the principal only, was a good defense. This is on the ground, says Chief Justice SHAW, "that it lulls the party into security, and prevents him from obtaining his indemnity; and it would be a fraud on the part of the holder, after making such assurances, to call upon the surety." So in *Carpenter* v. *King*, it was subsequently held by the same tribunal, the same distinguished judge giving the judgment of the court, that where "the creditor gives the surety notice that the debt is paid by the principal, and such debtor in consequence changes his situation, as by surrendering security, or forbearing to obtain security when he might, or otherwise suffers, he is discharged. And although the debt has not been paid, and such notice was given by mistake and without any fraudulent design, it is a mistake made at his peril, and he shall rather bear the loss than throw it upon one who

has been misled by it." In *Gordon* v. *McCarty*, 3 Whart., *supra*, it was declared that a release of the debt, procured by fraud of the principal, will not release the surety, though innocent of the wrong, unless he can show that his position has been altered for the worse in consequence of, or on the faith of the release. See also *Hays* v. *Ward*, 4 Johns. Ch., 123, 129. If we search for and extract the principle upon which these cases rest, it is this: If the creditor admits to the surety that he is paid, this admission is conclusive, provided the surety *acts upon* it, and would be made to suffer by the creditor's controverting the truth of the admission. And such an admission may be by acts or conduct as well as by words, implied as well as expressed. 1 Greenl. Ev., § 207. If the facts in the present case showed that the plaintiff, without consulting the surety, or without his agency, had levied upon the principal's property, sold it and satisfied his judgment (which is, of course, while the satisfaction remains without objection, equivalent to a declaration that he is paid), we say if the testimony had developed this state of facts, and the further fact that the surety, relying upon this conduct and these acts of the plaintiff, had relinquished securities, or failed to obtain security, or had otherwise been damnified, it would, to the extent of such damage, have been a discharge. But the testimony fails to make out any such case. Let us briefly examine. After the motion to set aside the sale was filed, the sheriff made his affidavit in the cause in relation to the circumstances of the levy. This the court (Rev., § 3440) was authorized to consider, more especially as the sheriff soon afterwards deceased, and this affidavit was made before the cause was transferred to the equity docket, and while it stood *on motion*. The sheriff testifies that before any levy was made he called on Brock "and demanded property to satisfy the execution; that Brock then and there gave me the description of the lands levied upon by me,

and requested and *directed* me to levy upon them, then and there representing that the said lands were *owned* by Cochran, and that he had a mortgage on them which he would release if I would levy upon the said lands. I relied upon Brock's representations, that Cochran owned said lands, and that he knew the same to be true. If I had not relied upon those representations of Brock, I would have examined the title to the said lands and sought for other property." Brock's testimony confirms this to some extent, and in some particulars is different. Brock testifies that the " sheriff came to me with the execution, and requested me to go with him to Cochran to see if we could get property to satisfy the same. We went to Cochran and demanded property or real estate. Cochran told him that he had no real estate but what was incumbered, *except what Brock had a mortgage on to secure him against that debt.*" This is substantially a representation that it was not incum-bered, and only differs from the sheriff's statement in say-ing that Cochran was the person who at that time made the representations.

Brock's testimony continues: The sheriff requested the numbers of the land; C. told him that there was one or two pieces of land in the (Brock) mortgage that was covered by the Martz mortgage; that he was not posted in the numbers, and that the sheriff had better take the (Brock) mortgage to the records and make his selection, which he did, and afterwards returned the mortgage to Brock. It is a quite significant fact that Brock refuses to swear that Cochran had title to these lands, and does not even testify that he supposed he had title. He took his mortgage on over four hundred acres to indemnify him against a liability not exceeding from six to eight hundred dollars. He was a neighbor, and on intimate and friendly terms with Cochran. He had a chattel mortgage on nearly all of his personal property. The sheriff was directed not to

levy on the Martz tract, to which it is probable there was title, and for which debt Cochran was also surety. Without going more into detail, we are satisfied from the whole testimony that Brock (as the sheriff testifies) either represented the lands to be owned by Cochran and requested the sheriff to sell them, or that Cochran made the untruthful representations as to the title in Brock's presence, and with knowledge on his part of the real state of the title; that it was upon these representations that the sheriff acted in making the levy, and the plaintiff's attorney in making the purchase. It is not a case where the plaintiff's acts and conduct have misled the surety to his prejudice, but a case, rather, where the acts and conduct of the surety have misled the creditor. The surety has therefore no greater equity than the principal debtor. As the debt subsists against the principal, it likewise subsists against the surety.

III. The appellant assigns for error the action of the court in allowing the plaintiff on the trial to read in evidence, without previous filing or notice, the deed from Cochran to Martz, above referred to, and in refusing, if it should be received in evidence, to continue the cause to enable him to rebut it. It is sufficient to say that the appellant has not brought this deed before us; or, if lost since the trial, has failed to furnish secondary evidence of its contents. We cannot, therefore, say with certainty that it was material. In the absence of a rule of court, we think the correct practice in equitable trials, by the first method, is, that all evidence, documentary and written, should be on file, or notice given before the trial begins, or if this is not done on a showing being made of surprise, the cause should be continued. We only know the nature of the Martz deed by statements in the affidavit for continuance. From this we learn that it was an absolute deed; and we infer, but this is not clear, that

*7. PRAC-*
*TICE: filing*
*evidence.*

it conveyed all or part of the lands sold by the sheriff. The affidavit states that it was offered by the plaintiff "to show that Cochran had conveyed the land" to Martz. The rebutting evidence, which appellant wished time to produce, was, that this deed was really a mortgage, and that the land was worth the amount of the Martz incumbrance, as well as the plaintiff's judgment, if the sale had been set aside in a reasonable time. In the uncertainty which exists in relation to the nature of this deed, we cannot reverse the case for the alleged errors of the court in admitting it, or in refusing to continue the cause. As far as we can judge, if the rebutting evidence had been received, it would not have altered the result. It was the appellant's duty to have a perfect record, or, if defective, to have supplied the diminution. One or two more thoughts, and we conclude. The application to vacate judicial sales of property should, of course, be seasonably made. Acquiescence may be inferred from delay, and long delay with knowledge of the facts may justify the court in refusing relief, especially if intervening rights have attached, or the circumstances have essentially changed. In the case at bar, the delay of two years and over does not, under the circumstances, bar the plaintiff's rights. He was misled by the defendants, and applied to vacate the sale without unreasonable delay after being advised of the state of the title. All the parties were before the District Court — creditor, principal and surety. As the surety, on the 6th day of February, 1861, satisfied his mortgage of February 23, 1858, on the erroneous supposition that his liability was at an end, the decree should have vacated the satisfaction, thus restoring all the parties to their respective rights as they existed before the sale. This additional order will be made in this court; and the decree below will stand.

8. JUDICIAL SALE: delay.

The chief justice, while concurring in the principles of law stated in the foregoing opinion, desires it to be said that he reaches a different conclusion upon the evidence.

Affirmed.