## THE CITY OF MAQUOKETA v. WILLEY.

1. **Principal and surety: RELEASE OF SURETY.** While the law does not require the principal to institute a suit against the debtor, yet having done so, and acquired a hold on property therein, as by levy of attachment or execution, he cannot afterward in any manner relinquish the same, or consent to a course of proceeding that will have that effect, and if he does so, the surety will be discharged to an extent corresponding with its value.

2. **Partnership: LIABILITY OF PROPERTY TO FIRM AND INDIVIDUAL DEBTS.** Upon the dissolution of a partnership the firm property may for a valuable consideration be sold and transferred to one of the partners, and when thus disposed of it is not followed by nor subject to the claims of partnership creditors as a fund out of which they are to be first satisfied.

3. —— And this rule prevails even though the partner so acquiring the property assumes the payment of the partnership debts.

4. **Estoppel: JUDICIAL SALE.** If property which should have been sold at public judicial sale, is irregularly sold at private sale instead with the acquiescence of one interested, he will thereby be estopped from questioning the validity of the proceeding.

*Appeal from Jackson District Court.*

THURSDAY, DECEMBER 6.

THE defendant was the security of one M. Murphy upon his official bond as treasurer of the city of Maquoketa. Murphy, having received a large amount of money in his capacity of treasurer, absconded without accounting therefor to plaintiff; and this action is brought against defendant as his security to recover the same. The petition, after setting out the cause of action, alleges that plaintiff brought suit by attachment against Murphy, and recovered judgment in the sum of $1,216.50, and that, by the sale of the property attached, there was realized the sum of $416.30, which was applied upon the judgment, leaving the sum of $800.20 due and unpaid thereon. The

35 323
87 98
35 323
106 654

35 323
117 13
117 331
35 323
120 316
35 323
128 591
128 592

defendant, among other defenses to the action, pleads the following facts: That in the attachment suit, referred to in the petition, plaintiffs caused a levy to be made upon property of Murphy sufficient in value to satisfy the whole claim against him, which was taken possession of by the officer holding the writ; that after the seizure of the property, the plaintiff, without the consent of defendant, "caused the abandonment and relinquishment of the levy upon all of the goods" taken upon the attachment.

As a further defense, it is alleged that the plaintiff, without defendant's consent, agreed to and caused the consolidation of the attachment suit with another action prosecuted by one Shattuck against Murphy, the city of Maquoketa and others, wherein a departure was had from the regular course of legal proceedings, and consented to the entry of a judgment unauthorized by law in the actions thus consolidated, and that in said proceedings the plaintiff consented to a private sale of the property attached, which was at less than its actual value. On account of these acts of plaintiff defendant claims that he is wholly discharged from liability upon the bond of Murphy.

The cause was tried to the court without a jury. The plaintiff introduced evidence establishing the defalcation of Murphy, the recovery of a judgment against him and the payment thereon as set out in the petition. The bond executed by defendant as security was given in evidence. It was also shown by the returns upon the attachment that goods to the value of $1,958.58 were seized upon as the property of Murphy in the attachment proceeding at the suit of the city. These goods were sold upon execution, as is shown by the return thereon, for the sum of $1,137, of which sum $106.30 was applied upon the judgment against Murphy, and the balance, after paying costs, to the amount of $147.07, viz.: $891.99, was paid to certain parties in a chancery action pursuant to the decree of the court. The proceedings and order of court touching this chancery

action will be hereafter sufficiently set out. The balance of the money credited upon the judgment was made by the sale upon execution of certain lands of Murphy, and no question arises thereon.

The following facts were established by defendant's testimony : One Shattuck intervened in the action brought by the city against Murphy, claiming that the goods levied upon under the attachment and sold on the execution, were partnership property belonging to the firm of Murphy & Shattuck, defendant therein, and the intervenor being the copartners constituting the firm. The goods at the time of the attachment levy were in the possession of the intervenor. The intervenor in his petition alleges that there is a large outstanding indebtedness against the firm, and claims that he has a lien upon the property to secure the payment of the firm debts and his own interest therein. He asks that the property be discharged from the attachment and restored to his possession. Shattuck also instituted a chancery action, alleging, in his petition therein, the existence of the copartnership consisting of himself and Murphy, the indebtedness of the firm to the amount of $1,200, and that Murphy had drawn out of the firm the sum of $574.53, and that the net assets of the concern would not exceed $1,350. The institution of the suit by plaintiff against Murphy and the proceedings therein are recited. Murphy's insolvency and that he had absconded, is avowed. Shattuck, in this action, claimed that he held a lien upon the goods attached on account of the partnership debts and his own interest therein, and, as relief, asked that an injunction issue to restrain the sale of the goods, that the affairs of the firm be settled and the proceeds of the goods be applied to the payment of the firm debts and the discharge of his interest therein. The city, the sheriff and Murphy were made defendants in this action. The answer of the city, both to the petition of intervention and the petition in the chancery action, sets up as a defense,

among other things, that prior to the commencement of the suit against Murphy the partnership before existing between Murphy and Shattuck was dissolved, and its assets distributed between the partners; that Shattuck received in this settlement the notes and accounts of the firm, and Murphy the goods in question. Under this arrangement Murphy was to pay and discharge all the debts of the firm. It is charged by the city in its different answers, that the property attached was and continued to be the individual property of Murphy.

By proper order of the court these proceedings instituted by Shattuck — the intervention and chancery action — were consolidated, and the cause was sent to a referee who reported upon the facts, and his conclusions of law in the case, which, so far as are necessary to be stated, are substantially as follows:

1. Shattuck and Murphy, who were equal partners in the mercantile business, on the 18th day of September, 1869, took an inventory of the firm assets and liabilities, whereby it appeared that the property of the concern consisted of goods to the value of $2,559, and notes and book accounts amounting to $1,305.58. The debts of the firm amounted to $1,073.40, $400 being due to Murphy and $673.40 to other parties.

2. Between the last-mentioned date and the 25th day of the same month the firm was dissolved upon the following terms: Murphy taking the goods of the firm and assuming to pay all firm debts, and undertaking to pay his partner $243.40, Shattuck receiving the notes and accounts due and owing to the firm.

3. At the time of the dissolution each of the parties took possession of the property as it was assigned in the division, Murphy receiving the goods and Shattuck the notes and accounts. After the dissolution Shattuck remained in the store helping Murphy in selling the goods.

4. On the 3d day of October, 1869, Murphy absconded,

and soon thereafter (October 6) the action against him brought by the city was instituted, and the goods in question seized upon the attachment issued thereon.

The referee, as a conclusion of law, found, " That the proceeds of the partnership property is the primary fund for the payment of the partnership debts ; that the property attached having been turned over to Murphy upon his assumption to pay the partnership debts, and being now in the custody of the law, the creditors of said partnership, or the retiring partner for his own protection and the protection of the firm creditors, have a right to intervene as against a party seeking to subject said goods to the payment of an individual debt of the other partner, and have the firm debts first satisfied ; and that said intervenor may maintain this action to that extent. That said partnership debts of $673.40 have priority over the debt due to the plaintiff, the city of Maquoketa."

Thereupon the referee recommended that of the proceeds of the sale of the goods $673.40, and an amount sufficient to cover accrued interest on the partnership debts, $50, be deposited with the clerk to be paid to the firm creditors upon their right being established to the respective claims ; the balance to be repaid to the city of Maquoketa upon the judgment against Murphy.

No objection was made to the report by the city, and it was confirmed under an agreement of the attorneys of the respective parties that the findings of the referee should not be disturbed ; a decree was entered in accordance with its recommendations.

Other evidence referred to in the opinion was introduced upon the trial, and a judgment was entered against defendant for the sum of $860. He now appeals to this court.

*Charles Rich* for the appellant.

*Frank Amos* for the appellee.

BECK, Ch. J. — The defense mainly relied upon by the defendant is, that, by the voluntary act of plaintiff, property seized upon the attachment issued in this action against Murphy brought by the city, was appropriated to the payment of the debts of the firm of Murphy & Shattuck, when in fact it belonged to Murphy, and could not legally have been taken upon the partnership debts. Defendant's position, then, is this: The plaintiff, by the institution of the suit against Murphy and the levy of the attachment, had acquired a hold upon property of Murphy which was legally liable to plaintiff's claim; by assenting to the confirmation of the referee's report and the rendition of judgment thereon according to its terms, the plaintiff voluntarily released the property seized upon the attachment, which operated to discharge the defendant. The consideration of this position demands, in the first place, an inquiry as to the rights and obligations of principal and security, touching the transaction. At present we will regard the property taken upon the attachment as the individual property of Murphy and not as partnership assets primarily liable to the partnership debts. We will also regard the act of plaintiff in assenting to the judgment upon the referee's report as a voluntary *relinquishment* of the property. These positions will be hereafter discussed in the light of the evidence and the rules of law applicable thereto.

*1. PRINCIPAL AND SURETY: release of surety.*

I. Our first inquiry relates to the obligation and rights of the principal and security. The law does not require the principal to institute a suit against the debtor or to pursue an action of indebtedness with diligence and to call to his aid all the remedies provided by the law. If he has brought suit, he may stop short in its prosecution before judgment, or if he has recovered judgment he may fail or refuse to sue out execution and, indeed, if execution has been issued, he may cause its return without a levy.

All this may be done even though judgment, execution and levy would have resulted in the collection of the debt against the principal debtor ; the security is not thereby discharged.   The creditor, however, cannot relinquish any hold he has acquired upon the property of the debtor without resorting to the proper proceedings to make therefrom the debt.   And this rule is alike applicable if the property has been voluntarily placed in the hands of the creditor, or he has acquired a lien thereon by proceedings at law.   This is unquestionably the rule of the authorities. They will be found collected and discussed in 3 Leading Cases in Equity (Hare & Wallace's Notes, p. 552, *Rus* v. *Berrington*), and 2 Am. Leading Cases, 260 (Hare & Wallace's Notes to *Pain* v. *Packard* and *King* v. *Baldwin*). See upon this point *Chambers* v. *Cochran & Brock*, 18 Iowa, 159.   This rule is well founded upon the equitable doctrine that he who, by his willful act, causes a loss, ought to endure its consequences and not transfer its effects to an innocent party.   The creditor, having in his hands property to secure the debt, voluntarily placed there by the principal debtor, would not be permitted to relinquish it or appropriate it to other purposes.   By such an act the property would be lost so far as the satisfaction of the debt is affected.   The case is not different if the property should come to the hands of the creditor by his own act, as through the institution of legal proceedings. In either case it is plain that equity and fair dealing toward the surety demand that he appropriate the property to the payment of the debt.

The case before us, if the goods seized upon the attachment were in fact the property of Murphy and not of the partnership, and the plaintiff by his act assenting to the rendition of judgment upon the referee's report, caused them to be diverted from the payment of the judgment, comes within the rule just stated.   By the act of the plaintiff property in its possession belonging to Murphy,

which had been taken for the purpose of satisfying the debt, was discharged, and then, so far as that debt is concerned, is lost. The loss must be borne by plaintiff.

II. We are required now to determine the positions which, thus far in the consideration of the case, have been assumed.

Was the property levied upon by the attachment, Murphy's individual property? The partnership, as it appears from the finding of the referee, was dissolved before the levy of the attachment, under an arrangement by which Murphy became the absolute owner, but bound by an agreement with his copartners to pay the firm debts. The good faith of this transaction is not impeached. As a question of fact, then, it must be regarded as settled by the record that at the time of the levy of the attachment the goods were the property of Murphy, and that he had undertaken with his partner to pay all the firm debts. Under this state of facts could the firm debts be legally enforced against those goods? It is a well-established doctrine that upon the dissolution of a firm its property may be transferred to one partner, *bona fide*, and for a valuable consideration, and be held free from the prior claim of the creditors of the partnership as a fund out of which they are to be first satisfied. And this rule prevails even though the partners so acquiring the property of the firm assume the payment of the partnership debts. See Story on Part., §§ 358, 359, and notes.

*2. PARTNER-SHIP: liability of property to firm and individual debts.*

This rule is not in conflict with that general and well-settled doctrine that partnership debts may be primarily enforced against partnership property, and is based on the rights of the partners, and not upon equities of the creditors. Partnership creditors have no lien upon the joint property for the payment of their claims. While the firm is in existence such property may be sold, and will be followed by no claim in law or equity of the creditors of the

firm. The partners are free to dispose of it as the property of individuals may be disposed of, and one of them may become its separate owner. The disposition may be made pending or upon an arrangement for dissolution, and as the partners may then sell their property to another so may they transfer it to one of themselves free from any equity of the joint creditors.

The law does not provide that partnership debts may be primarily enforced against joint property of the firm in preference to individual debts of the partners on the ground of any equity held by the joint creditors. The relief is secured to the joint creditor on account of equities of the partners. They have the right to demand that the firm property shall be devoted to the payment of the partnership debts and shall be first exhausted before their individual estates be taken thereon. On account of this equity the relief just stated is granted to the creditors. *Ladd* v. *Griswold*, 4 Gilm. 25; 1 Am. Lead. Cas. (Hare & Wallace's Notes), 469; Notes to *McCulloch* v. *Dashiell*, and *Matter of Smith;* Story on Part., § 358. We conclude, therefore, that the creditors of the firm of Murphy & Shattuck were not entitled to priority as to the goods seized in the attachment proceeding, and that the judgment of the court rendered upon the report of the referee was in conflict with the law.

III. The judgment was rendered upon the referee's report without objection and upon the consent of the city; that is, of its attorney in the case, for whose act in this matter the city must be held responsible. As we have seen, the judgment was unauthorized by law. It is then the case of a judgment by consent adverse to the rights and interest of the defendant. Under it certain property upon which the city had a legal hold for the satisfaction of its claim against Murphy, was discharged and thus lost to defendant. It was a voluntary relinquishment, for the judgment by consent, contrary to the rules of law and

the rights of the parties, must be so considered. Under the principles above announced, the loss resulting therefrom must be alone borne by the plaintiff.

IV. The goods seized under the attachment were sold after final judgment at private sale. It is claimed that, as this was a course not authorized by law, defendant is discharged from liability thereby. It is not shown that the goods were sold for less than their value or that a greater sum could have been realized by a public sale, but it is claimed that as the sale was illegal, prejudice to defendant will be presumed. We think, whatever may be the facts and law upon this branch of the case, it is well established by the evidence found in the record that defendant advised and assented to a private sale. The evidence quite satisfactorily leads us to this conclusion. This precludes defendant from taking any advantage of the irregular sale, even though it should be made to appear that loss was sustained thereby. Having knowledge of the contemplated private sale, it was his duty to forbid it, and stand upon his rights to have the law take its regular course. By abandoning this right and assenting to a different course pursued by the sheriff, he is now estopped *to complain* or claim relief for loss resulting therefrom.

4. ESTOPPEL; judicial sale.

V. It is the rule of the authorities that when property of the principal has come under the control of the creditor either by the voluntary act of the debtor or by process sued out by the creditor, for the purpose of being applied upon the debt, a voluntary relinquishment thereof will discharge the security *to an extent corresponding with its value. Mayhew* v. *Cricket,* 2 Swanst. 185; *Commonwealth* v. *Vanderslice,* 8 S. & R. 452; *Lechtenthal* v. *Thompson,* 13 id. 157; *Commonwealth* v. *Hoos,* 16 id. 252; *Dixon et al.* v. *Ewing,* 3 Ham. 280; *The Bank of Missouri* v. *Matson,* 24 Mo. 333; *Rice* v. *Morton,* 19 id. 263; *Baker* v. *Briggs,* 8 Peck. 122; *Law* v. *East India Co.,* 4 Ves. 824; *Payne*

v. *Commercial Bank*, 6 Smede & M. 24; *Sneid* v. *White*, 3 J. J. Marsh. 525; *Givens* v. *Busco*, id. 534; *Jones et al.* v. *Bullock*, 3 Bibb, 467; *Bank of Canton* v. *Reynolds*, 13 Ohio, 84; *Bank* v. *Fordice*, 9 Barr, 275; *Fergusson* v. *Turner*, 7 Mo. 497; *Hays* v. *Ward*, 4 Johns. Ch. 123; *Bugbee* v. *Duphora*, 9 Gill, 314.

Under the decree of the court rendered in the consolidated chancery and intervention proceedings instituted by Shattuck $723.29 was set apart for the payment of the partnership debts. This is the extent of the loss sustained by defendant. As we have just seen, he can have no claim for any loss resulting from the private sale of the goods, if any in fact did occur. The judgment in this case is for $860. That sum, less the amount set apart for the partnership creditors, is the true measure of plaintiff's damages on the bond. The judgment of the district court will be modified accordingly and a judgment will be entered here if plaintiff so elect for the sum of $136.71 and costs of the court below. The costs of the appeal will be paid by plaintiff.

It is proper to remark that there are irreconcilable discrepancies in the abstract before us touching the amount paid to the partnership creditors. The sheriff's return shows that $891.99 were set apart by him and paid over to the clerk for that purpose. But the decree of the court directed that the sum of $723.29 should be reserved for that purpose. It is impossible to explain this discrepancy. If we take either sum as the amount paid the firm creditors, a conflict will arise in the record. If the first named be the sum, the payment is in excess of the amount fixed by order of the court; if it be the second, a sum remains unaccounted for. But it is not our duty to attempt to harmonize evidence that is irreconcilable. We leave it for counsel to determine whether there be mistakes in the abstracts, and to explain these things which can only be done by reference to the original record. If the basis of

our conclusion as to the amount of the judgment which plaintiff ought to recover be incorrect, it may be shown hereafter, and if a proper case is made, the judgment of this court will be corrected as the facts may demand.

Modified and affirmed.